703 F.2d 375
 C-Y DEVELOPMENT COMPANY, a California Corporation, and
Harvest Investment Company, a California
Corporation, Plaintiffs-Appellants,
v.
CITY OF REDLANDS, Charles G. DeMirjyn, Mayor, James W.
Gorman, Vice-Mayor, Ken Roth, Oddie J. Martinez, Jr., and
Barbara Riordan, individually and as members of the City
Council for the City of Redlands; William C. Schindler,
individually and as Director of the Department of Planning
and Community Development for the City of Redlands, Chris
Christiansen, individually and as City Manager for the City
of Redlands, John Donnelly, individually and as Director of
Public Works for the City of Redlands; Ken Kienow, Harold
Hartwick, Bob Mitchell, John Egan and Richard Titera,
indiv., and as members of the Public Works Commission for
the City of Redlands, Defendants-Appellees.
 No. 81-5779.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Sept. 8, 1982.
Decided March 8, 1983.
 
 James D. Stroffe, Surr & Hellyer, San Bernardino, Cal., for plaintiffs-appellants.
 Richard A. Cross, Barton Gaut, Best, Best & Krieger, Riverside, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Central District of California.
 Before CHOY and WALLACE, Circuit Judges, and THOMPSON,* District Judge.
 WALLACE, Circuit Judge:
 
 
 1
 C-Y Development Company and Harvest Investment Company (C-Y) appeal from a district court order abstaining from the exercise of jurisdiction over C-Y's action against the City of Redlands, various public officials, and certain public employees. We affirm.
 
 
 2
 * In November 1978, the voters of the City of Redlands, acting by initiative, adopted Proposition R. It limited the number of residential building permits for subdivision development projects to 450 per year and required the city council to adopt a procedure to allocate the limited number of available permits on a competitive basis. In February 1979, the Redlands city council adopted Ordinance 1680,[1] which established a competitive point-rating system that evaluates applications in four categories: "Consistency With Zone," "Relationship of Project to Public Services," "Environmental and Esthetic Qualities," and "Low and Moderate Income Housing." In both the public services and environmental categories, an application must receive a prescribed minimum number of points before it is eligible for overall competitive evaluation with applications for other development projects.
 
 
 3
 Prior to the adoption of the point-rating system, C-Y had acquired 61.3 acres of land in the City of Redlands with the intention of subdividing the property and constructing single family residences. In keeping with the terms of Ordinance 1680, C-Y submitted the required applications during both the 1979 and 1980 calendar years. On both occasions, C-Y's applications were denied on the basis that they had not received the minimum number of points required in the public services category to qualify for competitive evaluation with other applications. The proposed plans failed largely because of the lack of proximity to and inadequacy of various existing public services.
 
 
 4
 After making administrative challenges and filing the required statutory claim, C-Y commenced this action in the district court. C-Y alleged that the point-rating system embodied in Ordinance 1680 prevents C-Y from developing its property as a single-family residential subdivision, and that this is the only practical economic use for the property. The complaint attacks the ordinance as arbitrary and capricious and alleges that C-Y's property has been taken without compensation, that C-Y's due process and equal protection rights have been violated, and that the actions of the planning commission and city council constitute a prejudicial abuse of discretion. C-Y requested damages, declaratory relief, and a writ of mandamus under Cal.Civ.Proc.Code Sec. 1094.5 (West 1980) commanding the city to repeal the ordinance and to issue C-Y the requested number of building permits.
 
 II
 
 5
 The district court abstained on the basis of Railroad Commission v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). The Pullman abstention doctrine is a narrow exception to the district court's duty to decide cases properly before it which allows postponement of the exercise of federal jurisdiction when "a federal constitutional issue ... might be mooted or presented in a different posture by a state court determination of pertinent state law." County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 189, 79 S.Ct. 1060, 1063, 3 L.Ed.2d 1163 (1959). Policies justifying abstention include "the desirability of avoiding unseemly conflict between two sovereignties, the unnecessary impairment of state functions, and the premature determination of constitutional questions." Martin v. Creasy, 360 U.S. 219, 224, 79 S.Ct. 1034, 1037, 3 L.Ed.2d 1186 (1959). See also Harrison v. NAACP, 360 U.S. 167, 176, 79 S.Ct. 1025, 1029-1030, 3 L.Ed.2d 1152 (1959). Central to all of these concerns are principles of comity and federalism. See Harrison v. NAACP, supra, 360 U.S. at 176-77, 79 S.Ct. at 1029-1030.
 
 
 6
 We have applied an abuse of discretion test in reviewing district court abstention decisions. See, e.g., Shamrock Development Co. v. City of Concord, 656 F.2d 1380, 1385 (9th Cir.1981); Pue v. Sillas, 632 F.2d 74, 78 (9th Cir.1980); Santa Fe Land Improvement Co. v. City of Chula Vista, 596 F.2d 838, 839 (9th Cir.1979) (Santa Fe ); Sederquist v. City of Tiburon, 590 F.2d 278, 281 n. 5, 283 (9th Cir.1978) (Sederquist ); Rancho Palos Verdes Corp. v. City of Laguna Beach, 547 F.2d 1092, 1095 (9th Cir.1976) (Rancho Palos Verdes ). However, this abuse of discretion standard should not be confused with the broader abuse of discretion standard applicable in other areas, such as rulings on certain evidentiary questions and posttrial motions. We have recently stressed that in cases involving abstention, discretion must be exercised within the narrow and specific limits prescribed by the particular abstention doctrine involved. Pue v. Sillas, supra, 632 F.2d at 78. A district court should abstain only in the "exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest." County of Allegheny v. Frank Mashuda Co., supra, 360 U.S. at 188-89, 79 S.Ct. at 1063. Thus, although one of our recent cases might be read to mean that there may be room for discretion in deciding to forego abstention in a case which is otherwise a proper candidate for abstention, Shamrock Development Co. v. City of Concord, supra, 656 F.2d at 1385, there is little or no discretion to abstain in a case which does not meet traditional abstention requirements. With this narrow standard in mind, we now proceed to the question of whether the district court properly abstained in this case.
 
 III
 
 7
 We have traditionally relied upon the three-prong test of Canton v. Spokane School District No. 81, 498 F.2d 840 (9th Cir.1974) (Canton ), to determine whether Pullman abstention is appropriate:
 
 
 8
 (1) The complaint "touches a sensitive area of social policy upon which the federal courts ought not to enter unless no alternative to its adjudication is open."
 
 
 9
 (2) "Such constitutional adjudication plainly can be avoided if a definitive ruling on the state issue would terminate the controversy."
 
 
 10
 (3) The possibly determinative issue of state law is doubtful.
 
 
 11
 Id. at 845 (footnote omitted), quoting Railroad Commission v. Pullman Co., supra, 312 U.S. at 498, 61 S.Ct. at 644. See also Pue v. Sillas, supra, 632 F.2d at 78; Santa Fe, supra, 596 F.2d at 839-40; Sederquist, supra, 590 F.2d at 281; Rancho Palos Verdes, supra, 547 F.2d at 1094.
 
 A.
 
 12
 C-Y properly concedes that the first of the three Canton criteria is satisfied. We have repeatedly stated that land use planning is a sensitive area of social policy which meets the first Canton requirement. E.g., Santa Fe, supra, 596 F.2d at 840.
 
 B.
 
 13
 In analyzing the second requirement, we have explained that "[t]he assumption which justifies abstention is that a federal court's erroneous determination of a state law issue may result in premature or unnecessary constitutional adjudication, and unwarranted interference with state programs and statutes." Pue v. Sillas, supra, 632 F.2d at 79. A state law question that has the potential of at least altering the nature of the federal constitutional questions is thus an essential element of Pullman abstention. This element is present here.
 
 
 14
 In its fourth cause of action, C-Y seeks a writ of mandamus pursuant to Cal.Civ.Proc.Code Sec. 1094.5 commanding the city to repeal Ordinance 1680 and to issue C-Y the requested number of building permits. In support of its request, C-Y asserts that the city's actions constitute a prejudicial abuse of discretion, that the city failed to comply with the requirements of Ordinance 1680, that the city's determination that C-Y's applications were not entitled to the minimum number of points required in the public services category of the point-rating system is not supported by the findings and that the findings are not supported by the evidence, and that the city's actions are not a reasonable exercise of the police power.
 
 
 15
 Although C-Y has not raised the point, another issue of state law involved in this case is whether the city has exceeded its authority based upon Cal. Gov't Code Sec. 65912 (West 1982). See Santa Fe, supra, 596 F.2d at 840-41. That section states that the government code does not authorize open space zoning that could "take or damage private property for public use without payment of just compensation therefor." Cal. Gov't Code, supra, Sec. 65912. Although Ordinance 1680 purports on its face to be nothing more than a building permit allocation system and does not alter the city's existing zoning plan, C-Y alleges that the effect of the ordinance and the intent of city planners was to deprive C-Y permanently of all beneficial use of its property and to ensure that the property remain undeveloped open space. Based on our reading of section 65912 and the few California cases construing the statute, it is unclear whether a municipal ordinance which on its face is only a building permit allocation plan but which allegedly has the effect of preventing any beneficial use of certain private property might be construed as a de facto open space zoning ordinance within the meaning of section 65912. See Santa Fe, supra, 596 F.2d at 840; Rancho Palos Verdes, supra, 547 F.2d at 1095. In addition, the deficit in C-Y's proposed plans pertaining to the lack of proximity to and inadequacy of existing public services is not necessarily immutable. It could be argued that the delay is only temporary and that C-Y's property will qualify for competitive evaluation with other development projects in the future when the public services necessary to support a new residential development are expanded. This in turn raises the question of the extent to which C-Y may be expected to contribute all or part of the cost necessary to bring the public services to a level which would qualify C-Y's project for competitive evaluation. See Cal. Gov't Code Sec. 65909 (West 1982). Delicate issues of local land use planning such as these are precisely the type of issues which should be left to the state courts to decide under the doctrine of abstention.
 
 
 16
 Resolution in the state courts of one or more of these state law questions could dispose of most of C-Y's federal constitutional claims. If, for example, the city did not follow the terms of Ordinance 1680 and miscalculated the number of points to which C-Y was entitled, the state courts could conceivably set aside the city's determination and order the city to allow C-Y's proposed development to proceed. See Cal.Civ.Proc.Code Sec. 1094.5 (West 1980). Abstention, therefore, could obviate the need for us to reach the federal constitutional question of whether C-Y is entitled to a remedy for inverse condemnation based upon the alleged permanent taking of its property.
 
 
 17
 C-Y argues, however, that even if the question of whether the city proceeded in the manner required by Ordinance 1680 is the type of state law issue required by our prior abstention cases, "its resolution as well as the resolution of any other ... issue of state law will not obviate C-Y's claim of constitutional entitlement to monetary damages for the regulatory taking of its Property." This is because the California Supreme Court has determined that monetary relief is not available for a regulatory taking and that invalidation of the impermissible regulation is the sole remedy. Agins v. City of Tiburon, 24 Cal.3d 266, 598 P.2d 25, 157 Cal.Rptr. 372 (1979), aff'd on other grounds, 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980). Thus, even if C-Y is able to have the city's decision reversed on the basis of state law, C-Y will still have been denied all practical economic use of its property for the period commencing with the city's refusal to issue the building permits and ending on the date the writ is issued. C-Y claims that it is constitutionally entitled to damages for this "temporary taking" and cites for support Justice Brennan's dissent in San Diego Gas & Electric Co. v. City of San Diego, 450 U.S. 621, 101 S.Ct. 1287, 67 L.Ed.2d 551 (1981).[2] C-Y argues that because its claim of constitutional entitlement to monetary damages for the alleged temporary taking of its property would survive any hypothetical adjudication of a state law question, abstention is not warranted.
 
 
 18
 Although C-Y has argued this point well, we are not persuaded that the abstention doctrine is confined to such narrow limits. It is true that in many of our prior abstention decisions, deferral to the state courts may have had the potential of mooting all of the federal constitutional issues involved. See, e.g., L.H. v. Jamieson, 643 F.2d 1351 (9th Cir.1981); International Brotherhood of Electrical Workers, Local Union No. 1245 v. Public Service Commission, 614 F.2d 206 (9th Cir.1980). Moreover, the second of the three Canton criteria relied on in our abstention decisions speaks in terms of the constitutional adjudication "plainly" being avoided by a definitive ruling on the state issue. Nevertheless, this does not represent the outer limits of the abstention doctrine. In Canton we explained that with regard to the second and third criteria "it is crucial that the uncertainty in the state law be such that construction of it by the state courts might obviate, or at least delimit, decision of the federal (constitutional) question." 498 F.2d at 845 (citations omitted) (emphasis added). In none of our cases have we held that the deferral to state court must have the potential of entirely obviating all federal constitutional questions. On the contrary, several cases of our court and of the Supreme Court have indicated that it is enough that the state court determination may obviate, in whole or in part, or alter the nature of the federal constitutional questions. See, e.g., Ohio Bureau of Employment Services v. Hodory, 431 U.S. 471, 481, 97 S.Ct. 1898, 1904, 52 L.Ed.2d 513 (1977) ("abstention may eliminate or materially alter the constitutional issue presented"); Bellotti v. Baird, 428 U.S. 132, 146-47, 96 S.Ct. 2857, 2865-2866, 49 L.Ed.2d 844 (1976) ("abstention is appropriate where [deferral to the state courts] '... might avoid in whole or in part the necessity for federal constitutional adjudication, or at least materially change the nature of the problem' "); Colorado River Water Conservation District v. United States, 424 U.S. 800, 814, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976) ("mooted or presented in a different posture"); Knudsen Corp. v. Nevada State Dairy Commission, 676 F.2d 374, 377 (9th Cir.1982) (same); Pue v. Sillas, supra, 632 F.2d at 79 ("render unnecessary or substantially modify"). See also Ryckman, Land Use Litigation, Federal Jurisdiction, and the Abstention Doctrines, 69 Calif.L.Rev. 377, 403 (1981) (asserting that abstention is justified where state court adjudication would "alter the contours" of the federal constitutional issue).
 
 
 19
 C-Y's complaint contains difficult constitutional issues of first impression. The Supreme Court has not yet decided whether the Constitution requires a state court to make available money damages to redress state regulatory efforts amounting to a taking of property. That issue was left open in San Diego Gas & Electric Co. v. City of San Diego, supra. See Bowden & Feldman, Take It or Leave It: Uncertain Regulatory Taking Standards and Remedies Threaten California's Open Space Planning, 15 U.C. Davis L.Rev. 371, 375 n. 20 (1981); Comment, Just Compensation or Just Invalidation: The Availability of a Damages Remedy in Challenging Land Use Regulations, 29 U.C.L.A.L.Rev. 711, 720-21 (1982). But see San Diego Gas & Electric Co. v. City of San Diego, supra, 450 U.S. at 647, 101 S.Ct. at 1301 (Brennan, J., dissenting). Were we to vacate the abstention order and remand for proceedings on the merits, the district court would need to decide the difficult questions of whether a taking had occurred and what constitutional remedy or remedies are required. If the court found that a taking had occurred, it would then need to decide whether the proper remedy was invalidation of the ordinance only, see Agins v. City of Tiburon, 24 Cal.3d 266, 272-73, 276-77, 598 P.2d 25, 157 Cal.Rptr. 372 (1979), aff'd on other grounds, 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980), compensation for the permanent taking, see Dahl v. City of Palo Alto, 372 F.Supp. 647 (N.D.Cal.1974), or invalidation of the ordinance and damages for the interim losses or "temporary taking" of the property. Cf. San Diego Gas & Electric Co. v. City of San Diego, supra, 450 U.S. at 656-60, 101 S.Ct. at 1306-1308 (Brennan, J., dissenting) (proposing constitutional rule requiring the government to pay just compensation for the period "commencing on the date the regulation first effected the 'taking,' and ending on the date the government entity chooses to rescind or otherwise amend the regulation"). See generally Comment, supra, 29 U.C.L.A.L.Rev. 711. In reaching these decisions the court would be breaking new ground in constitutional law, and perhaps unnecessarily so.
 
 
 20
 Although abstention in this case may not obviate the need to decide all the federal constitutional questions, it will substantially reduce the contours of such adjudication and place it in a different posture. Since the state court determination might result in invalidation of the ordinance or a writ of mandate directing the city to issue the requested permits, abstention may save us from prematurely and unnecessarily deciding the question of the proper constitutional remedy for an alleged permanent deprivation of property rights resulting from a state regulatory taking. Although following such hypothetical state adjudication C-Y might return to federal court to seek damages for the alleged temporary deprivation of its property rights, see Sederquist, supra, 590 F.2d at 281, the constitutional issues will have been substantially narrowed and refined. We are satisfied that the potential for such a narrowing of the constitutional issues and the principles of comity that will be furthered by allowing the state courts to first pass on the validity of this municipal ordinance under state law are sufficient "countervailing interests" to justify abstention in this case. See County of Allegheny v. Frank Mashuda Co., supra, 360 U.S. at 188-89, 79 S.Ct. at 1063.
 
 C.
 
 21
 Finally, we must determine whether the state law questions are doubtful. It is crucial that this criterion be satisfied. Pue v. Sillas, supra, 632 F.2d at 78. If the outcome of the state law questions is not in doubt, the risk of a federal court's erroneous application of state law resulting in "unnecessary constitutional adjudication ... and unwarranted interference with state programs and statutes" is not present. Id. at 79.
 
 
 22
 The outcome of the state law questions in this case is sufficiently in doubt. We conclude that uncertainty surrounds application of the administrative mandamus procedure found in Cal.Civ.Proc.Code Sec. 1094.5.
 
 
 23
 Whether a city has abused its discretion by refusing to issue a building permit is by nature a question turning on the peculiar facts of each case in light of the many local and statewide land use laws and regulations applicable to the area in question. We do not claim the ability to predict whether a state court would decide that the city here abused its discretion in declining to give [C-Y] permission to [proceed with its residential development plans].
 
 
 24
 Sederquist, supra, 590 F.2d at 282-83. We find Sederquist to be controlling here. See also Santa Fe, supra, 596 F.2d at 841.
 
 
 25
 Because we find that the three traditional tests for Pullman abstention in this circuit have been met, we conclude that the district court did not abuse its discretion in abstaining pending resolution of the state law questions in state court.
 
 IV
 
 26
 Alternatively, C-Y argues that abstention is inappropriate in this case because several of its claims, based on 42 U.S.C. Sec. 1983, allege civil rights violations. We conclude, however, that there is no per se civil rights exception to the abstention doctrine. 1A, Pt. II J. Moore, W. Taggart, A. Vestal & J. Wicker, Moore's Federal Practice p 0.203, at 2112-14 (2d ed. 1982). Although the Supreme Court has demonstrated a reluctance to order abstention in cases involving certain civil rights claims, such as voting rights, Harman v. Forssenius, 380 U.S. 528, 537, 85 S.Ct. 1177, 1183, 14 L.Ed.2d 50 (1965), racial equality, Griffin v. County School Board, 377 U.S. 218, 228-29, 84 S.Ct. 1226, 1231-1232, 12 L.Ed.2d 256 (1964); but see Harrison v. NAACP, 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed.2d 1152 (1959); Railroad Commission v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), and first amendment rights of expression, Procunier v. Martinez, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), we are not aware of any cases in which the Supreme Court or this court has indicated a reluctance to abstain in land use matters brought under 42 U.S.C. Sec. 1983.
 
 
 27
 Although we are aware of the hardship abstention may cause C-Y, this does not change our result.
 
 
 28
 Considerations of delay, inconvenience, and cost to the parties, which have been urged upon us, do not call for a different result. For we are here concerned with the much larger issue as to the appropriate relationship between federal and state authorities functioning as a harmonious whole.
 
 
 29
 Chicago v. Fieldcrest Dairies, 316 U.S. 168, 172-73, 62 S.Ct. 986, 988, 86 L.Ed. 1355 (1942).
 
 
 30
 The City of Redlands argues that abstention was also appropriate under Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), and that C-Y's action therefore should have been dismissed. We find Burford abstention inappropriate under these circumstances for the reasons stated in International Brotherhood of Electrical Workers, Local Union No. 1245 v. Public Service Commission, supra, 614 F.2d at 211-12; Isthmus Landowners Association v. California, 601 F.2d 1087, 1090 (9th Cir.1979); Santa Fe, supra, 596 F.2d at 841-42; and Rancho Palos Verdes, supra, 547 F.2d at 1096.
 
 
 31
 AFFIRMED.
 
 
 
 *
 Honorable Bruce R. Thompson, United States District Judge, District of Nevada, sitting by designation
 
 
 [1]
 Redlands, Cal., Ordinance 1680 (Feb. 20, 1979). Ordinance 1680 was later amended in minor respects by Redlands, Cal., Ordinance 1717 (Apr. 1, 1980). References to Ordinance 1680 in this opinion are intended to include the amendments in Ordinance 1717
 
 
 [2]
 The majority in San Diego Gas & Electric Co. v. City of San Diego decided the case on procedural grounds and thus did not reach the merits but observed that "the federal constitutional aspects of that issue are not to be cast aside lightly." 450 U.S. at 633, 101 S.Ct. at 1294