**BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION, Trustee, and Robecor, Inc., Plaintiffs-Appellants,**

v.

**SUMMERLAND COUNTY WATER DISTRICT and Does I Through XV, Defendants-Appellees.**

No. 84–5719.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 6, 1985.

Decided July 26, 1985.

Charles W. Willey, Santa Barbara, Cal., for plaintiffs-appellants.

Lani Meanley Collins, Santa Barbara, Cal., for defendants-appellees.

Before GOODWIN, FLETCHER, and PREGERSON, Circuit Judges.

GOODWIN, Circuit Judge.

Bank of America and other appeal from denial of a preliminary injunction and from an order staying proceedings in federal court pending state court adjudication of state law questions. Appellants also urge that the district court should have granted their motion to disqualify counsel for the Summerland County Water District. We affirm the stay and denial of the injunction. The disqualification issue will receive further consideration by the district court, if necessary, following the state court proceedings.

The Summerland County Water District allocates water for the Summerland area of Santa Barbara County. It controls a limited amount of water, measured in acre-feet per year, which it dispenses primarily for single-family accounts, called meters.

In October 1974 the District declared a water shortage emergency and established a "sequency" list of applications from persons who hoped to be given meters when and if the shortage was remedied. The sequency list gave priority in the order applications were filed.

As a result of rationing and conservation the District had water available for new meters in 1983. Under Summerland County Water District Ordinance No. 76–4(5), the District devised a new system for allocating the available water. This system abandoned the priority established by the sequency list, and designated eligibility according to parcel size and land use for applicants who agreed to waive any rights under the old system. The result was that meters were made available only for single-family use and that water distribution was limited to .69 acre-feet per year for each parcel larger than one acre.

In 1974 appellant Bank of America became trustee of a parcel of land within the jurisdiction of the District. Bank of America was fourth on the original sequency list, having applied for 23 acre-feet per year. Under the new system Bank of America is allocated .69 acre-feet per year for its entire parcel of 46.44 acres. The Bank does not actually receive water, however, because it does not qualify as a single-family user.

In November 1983 Bank of America filed this action seeking a temporary restraining order, declaratory relief, and an injunction preventing the District from carrying out its new water allocation system. Bank of America brought its action based on state land use and water law theories and also alleged violation of the Fifth and Fourteenth Amendments through inverse condemnation, and violation of its civil rights under 42 U.S.C. § 1983, by arbitrary classification of landowners for purposes of water allocation.

After granting a temporary restraining order, the district court denied a preliminary injunction and entered a stay order. The court abstained from trying Bank of America's land use and water law claims pending their resolution in state court. The court retained jurisdiction over Bank of America's constitutional claims in the event the state court did not conclude the litigation.

## ABSTENTION

█ In refusing to decide the merits of Bank of America's state law claims, the trial judge invoked the *Pullman* abstention doctrine. Under this doctrine the district court may, at its discretion, refrain from deciding constitutional questions which hinge on difficult state law issues, if the constitutional controversy would be terminated by resolution in state court of those issues. *Railroad Comm'n v. Pullman Co.*, 312 U.S. 496, 500–01, 61 S.Ct. 643, 645, 85 L.Ed. 971 (1941).

█ Because it interferes with the duty of the district court to hear cases properly before it, *Pullman* abstention is appropri-

ate only under limited circumstances. *Cinema Arts, Inc. v. Clark County*, 722 F.2d 579, 580 (9th Cir.1983). This court employs a three-part test, each element of which must be met, to decide whether abstention is warranted. The elements of the test are:

(1) The complaint "touches a sensitive area of social policy upon which the federal courts ought not to enter unless no alternative to its adjudication is open."

(2) "[C]onstitutional adjudication plainly can be avoided if a definitive ruling on the state issue would terminate the controversy."

(3) The possible determinative issue of state law is doubtful.

*Id., quoting Canton v. Spokane School District No. 81*, 498 F.2d 840, 845 (9th Cir.1974); *see Santa Fe Land Improvement Co. v. City of Chula Vista*, 596 F.2d 838, 839–40 (9th Cir.1979).

Two "sensitive area[s] of social policy" are at stake in this case. To the extent that the issues in this case involve land use concerns, neither party disputes that the first *Canton* factor is met. *See C–Y Development Co. v. City of Redlands*, 703 F.2d 375, 377 (9th Cir.1983) ("We have repeatedly stated that land use planning is a sensitive area of social policy which meets the first *Canton* requirement."). Moreover, with regard to the specific land use problem involved here, this court has noted before that complex inverse condemnation problems are best left to state resolution. *See Rancho Palos Verdes Corp. v. City of Laguna Beach*, 547 F.2d 1092, 1095 & n. 6 (9th Cir.1976). To the extent that water rights are at stake, those issues are no less sensitive than land use issues. *Cf. Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 819, 96 S.Ct. 1236, 1247, 47 L.Ed.2d 483 (1976), (finding abstention inappropriate, but noting that federal policy generally recognizes the rights of states to make and implement their own water use policy); *Robinson v. Ariyoshi*, 753 F.2d 1468, 1471 (9th Cir. 1985) (decision on merits of constitutional

claim delayed while water rights questions certified to Hawaii Supreme Court).

■ The applicability of the second *Canton* factor is assured by this court's decision in *C-Y Development,* 703 F.2d at 377–80. The plaintiff in *C-Y Development* argued that abstention was improper because resolution of the state law issues would not erase the then unsettled constitutional question whether, in the face of California law to the contrary, plaintiff could recover monetary damages for the regulatory taking of its property. We made it clear that abstention does not require that the state court action completely eliminate constitutional claims:

> Although abstention in this case may not obviate the need to decide all the federal constitutional questions, it will substantially reduce the contours of such adjudication and place it in a different posture. Since the state court determination might result in invalidation of the ordinance ..., abstention may save us from prematurely and unnecessarily deciding [a constitutional question].... Although following such hypothetical state adjudication C-Y might return to federal court to seek damages ..., the constitutional issues will have been substantially narrowed and refined.

*C-Y Development,* 703 F.2d at 380 (citations omitted). Under *C-Y Development,* the important factor is not whether the constitutional issues are uncertain, but whether their resolution depends on state law and the extent to which they can be eliminated or simplified by state court proceedings.

■ Bank of America's challenge to the District's allocation system involves a number of questions of state law, including the proper interpretation of the water district ordinance, the extent of the District's authority under the ordinance and under state law, the extent to which landowners acquired rights under or were entitled to rely upon the prior allocation system, and the extent to which land use planning of water law principles govern the District's allocation decisions. Because resolution of these state law questions may lead to invalidation of the district ordinance and may provide Bank of America with the relief it seeks, it may well narrow and perhaps eliminate Bank of America's federal claims.

The third *Canton* requirement is that the state law questions have doubtful outcomes, as these questions do. The California courts have not definitively determined the limits of water districts' authority, or whether water districts' allocation decisions are governed by land use or water law principles. Even if the issues in the case are categorized as land use questions, the state position is still uncertain. In 1979 the California Supreme Court made clear its opinion that monetary damages were not available for inverse condemnation. *Agins v. City of Tiburon,* 24 Cal.3d 266, 276–77, 598 P.2d 25, 28, 157 Cal.Rptr. 372, 378 (1979), *aff'd,* 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980). It is not clear whether California courts would maintain that position after it was called into question by five members of the Supreme Court in *San Diego Gas & Electric Co. v. City of San Diego,* 450 U.S. 621, 660–61, 101 S.Ct. 1287, 1308–09, 67 L.Ed.2d 551 (1981) (Justice Brennan, joined in dissent by Justices Stewart, Marshall and Powell). *See id.* at 633–34, 101 S.Ct. at 1294–95 (Rehnquist, J., concurring); *Martino v. Santa Clara Valley Water District,* 703 F.2d 1141, 1147–48 (9th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 151, 78 L.Ed.2d 141 (1983). Because *Agins* stands on something of a precedential precipice, it is appropriate as a matter of comity to allow the state to make or alter its own law. *See C-Y Development,* 703 F.2d at 380.

In sum, the trial court judge did not abuse her narrow scope of discretion by refusing to decide state law issues while retaining jurisdiction over whatever federal claims might survive a state court proceeding. *See Cinema Arts,* 722 F.2d at 580; *C-Y Development,* 703 F.2d at 377.

## PRELIMINARY INJUNCTION

■ An order issuing or denying a preliminary injunction is reversed only if

the lower court abused its discretion or based its decision upon erroneous legal premises. *American Motorcyclist Ass'n. v. Watt,* 714 F.2d 962, 965 (9th Cir.1983). A party seeking an injunction must meet one of two sets of requirements. Under one test the party must show a strong likelihood of success on the merits of its claim, a balance of irreparable harm which tips toward it, and public interest favoring the injunction. Under the other test the party must show either probable success and the possibility of irreparable harm or the presence of serious questions and a balance of hardships tipped sharply toward it. *Martin v. International Olympic Committee,* 740 F.2d 670, 674–75 (9th Cir. 1984); *American Motorcyclist,* 714 F.2d at 965. The trial judge was correct to deny the injunction under either standard.

■ Plaintiffs have only a fair chance of success on the merits of their constitutional claims. It will make a significant difference in this regard whether the state court categorizes the underlying issues as involving land use principles or water law principles. If Bank of America can demonstrate that land use principles apply, it may well be able to recover for inverse condemnation. *See Martino,* 703 F.2d at 1148. If water law principles apply, however, Bank of America's claims to due process, equal protection and compensation for a taking are weak.

■ Bank of America is not yet a water user; it is only a potential water user. Under California law, potential water use is not a property right. "[A] potential water user does not possess any absolute right to be afforded water service and ... the Constitution does not require that he be treat-ed in the same manner as established users...." *Swanson v. Marin Municipal Water District,* 56 Cal.App.3d 512, 522, 128 Cal.Rptr. 485, 491 (1976). *See United States v. Willow River Power Co.,* 324 U.S. 499, 502–03, 65 S.Ct. 761, 763–64, 89 L.Ed. 1101 (1945) (right to water is not necessarily a property right, even when it accompanies land ownership). *See also Hollister Park Investment. Co. v. Goleta County*

*Water Dist.,* 82 Cal.App.3d 290, 294, 147 Cal.Rptr. 91, 93 (1978) (*quoting Swanson,* 56 Cal.App.3d at 522, 128 Cal.Rptr. at 491). If potential water use is not property, Bank of America cannot complain that it has been deprived of property, with or without compensation or due process.

■ Moreover, interest in water for real estate development purposes is not a fundamental, nor, perhaps, even a constitutionally protected interest. *Cf. Lindsey v. Normet,* 405 U.S. 56, 74, 92 S.Ct. 862, 874, 31 L.Ed.2d 36 (1972) (right to "decent, safe and sanitary" shelter is not a fundamental interest); *Mlikotin v. City of Los Angeles,* 643 F.2d 652, 653 (9th Cir.1981) (right to municipal utilities is not a constitutionally protected interest). The District's classification of water users is rationally related to a legitimate government purpose of conserving a scarce resource and distributing it as equitably as possible. *See United States Department of Agriculture v. Moreno,* 413 U.S. 528, 533, 93 S.Ct. 2821, 2825, 37 L.Ed.2d 782 (1973); *accord Swanson,* 56 Cal.App.3d at 523, 128 Cal.Rptr. at 492. As long as no fundamental interest is at stake, and the classification is rational, Bank of America will be unable to prevail on its contention that it has suffered violation of its rights to equal protection, *see Massachusetts Board of Retirement v. Murgia,* 427 U.S. 307, 312–314, 96 S.Ct. 2562, 2566–2567, 49 L.Ed.2d 520 (1976), or due process, *Moreno,* 413 U.S. at 533, 93 S.Ct. at 2825.

The balance of harm and public interest questions are, in this case, closely related. Neither favors granting an injunction. Bank of America may well suffer financial harm if its miniscule water allocation makes the parcel (which it intends to subdivide) unmarketable. On the other hand, Bank of America does not deny that it is currently involved in litigation with the California Coastal Commission over its attempt to subdivide the land. The new allocation system therefore presents no additional hardship to Bank of America which it does not face already. This is especially so because the new allocation system is to be

in effect only during the declared water shortage emergency.

The District, however, might suffer hardship if an injunction were imposed. Its only source of revenue is the distribution of water. An injunction would block new revenue otherwise available from distribution of the water marshalled by sound water management policies. Moreover, the public interest involved in equitable distribution of this water does not warrant an injunction. The equities do not require enjoining the provision of water to qualified new and old meters while Bank of America attempts to resolve its zoning problems and pursues uncertain constitutional claims against the District.

## DISQUALIFICATION OF COUNSEL

During pretrial proceedings, Bank of America moved to disqualify the law firm representing the District in this action on the grounds that the firm had gained relevant information when Bank of America's counsel was a member of the firm. The trial judge held a hearing on the motion, but did not enter a ruling.

We leave it to the state court to decide whether the District's counsel should be disqualified from representing the District in the state court proceedings which lie ahead. Because adjudication of the state law issues may obviate further federal court proceedings, we need not decide now whether disqualification of the District's counsel in federal court is necessary. Instead, we remand, with instructions to the district court that if the action returns for constitutional adjudication the court rule on the disqualification questions in light of the principles enunciated in *Trone v. Smith*, 621 F.2d 994 (9th Cir.1980) and *Novo Terapeutisk Laboratorium A/S v. Baxter Travenol Laboratories*, 607 F.2d 186, 196 (7th Cir.1979).

Affirmed in part and remanded in part for further consideration by the district court, if necessary, of the disqualification issue.