**A. Frank McMILLAN and Gladys McMillan, Plaintiffs-Appellants,**

**v.**

**GOLETA WATER DISTRICT, Edward G. Maschke, Patricia Shewczyk, Donna O. Hone, Donald W. Weaver, Jack D. Walker, and Lloyd C. Fowler, Defendants-Appellees.**

No. 85–5894.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 5, 1986.

Decided June 30, 1986.

---

Thomas W. Birmingham, Sacramanto, Cal., for plaintiffs-appellants.

Robert Goodwin, Santa Barbara, Cal., Thomas P. Anderle, Santa Barbara, Cal., for defendants-appellees.

Before PREGERSON, POOLE, and THOMPSON, Circuit Judges.

POOLE, Circuit Judge:

## I. OVERVIEW

Frank and Gladys McMillan appeal the summary judgment of their 42 U.S.C. § 1983 claim for inverse condemnation and violations of their equal protection and substantive due process rights. The McMillans argue on appeal that (1) the Goleta County Water District ("Water District") took their property without just compensation by applying a water service moratorium to deny their application for water service; (2) the Water District subjected them to disparate treatment for an illegitimate governmental purpose; and (3) the Water District and the district court denied them substantive due process by relying on a California state court decision holding that the moratorium did not effect an unconstitutional taking of property. We affirm the dismissal of the equal protection claim, and reverse on the statute of limitations and due process issues.

## II. FACTS AND PROCEEDINGS

In 1966, the McMillans acquired real property located within the Goleta County Water District. At that time, a residence on the property was supplied with water

through a meter installed by the Water District. In 1967, the McMillans began to redevelop the property and to demolish the residence, and the water service was officially disconnected. Due to financial difficulties, the McMillans did not complete the redevelopment. In 1968, the Water District installed a new water meter on the property, but no water has been used on the property since 1967.

In December 1972, the Water District's board of directors declared the existence of a water shortage emergency, and enacted Ordinance No. 72–2, which imposed a moratorium on new water connections. The moratorium applied to the McMillans' property even though there was a "connection" (water meter) on the property, inasmuch as Section 9 of the Ordinance provided that

> [w]ater service shall not be provided through any existing, installed water service facilities which were not used for furnishing any significant quantity of water for any bonafide (sic) purpose at any time within five years prior to December 7, 1972, unless an applicant for water service through said facilities has satisfied the conditions of Sections 2, 3, 4 or 5 of this ordinance.

In May 1983, the Water District's voters adopted by referendum a "Responsible Water Policy Ordinance" also prohibiting new water connections during times of water shortage. On September 15, 1982, the McMillans formally applied to the Water District for renewal of their water service, claiming eligibility under Ordinance 72–2, Section 13.[1]

After a hearing, the Water District's board of directors denied the McMillans' request for an exception to the moratorium. The Water District's general manager denied the McMillans' request for reconsideration of their application on the basis of hardship.

On May 2, 1983, the McMillans commenced this action against the Water District and several of its officers and employees. The district court dismissed the complaint for failure to state a claim upon which relief can be granted and for failure to properly allege subject matter jurisdiction. The McMillans appealed the dismissal, and this court remanded the case to the district court with instructions to grant the McMillans leave to amend their complaint to allege that they were at least "constructive" users of water.[2] The McMillans amended their complaint, alleging that they "at all times were actual users of water." They also alleged that their substantive due process rights were violated because the moratorium was irrational and a "sham" and that their equal protection rights were violated because other applicants were granted hardship exceptions while they were not. They requested damages for violations of their civil rights, interim damages for the temporary taking of their property, and an order directing the Water District to provide water service to the property. The Water District filed an answer to the amended complaint, alleging, *inter alia*, that the plaintiffs failed to state a claim upon which relief could be granted, that the district court lacked subject matter jurisdiction, that the claim was barred by the statute of limitations, and that the district court should abstain from exercising its jurisdiction. On May 3, 1985, the district court granted summary judgment to the Water District on the inverse condem-

---

1. Ordinance 72–2, Section 13 allows the Water District, in its discretion, to grant permits allowing for water service otherwise prohibited if it finds that

   (1) the restrictions herein would cause an undue hardship or emergency condition or (2) that the granting of the permit will not adversely affect the water supply or service to other existing water consumers or (3) that due to peculiar facts and circumstances, none of the provisions of this Ordinance authorizing new water service are applicable to the situa-

tion under consideration, if the Board of Directors in its discretion finds that the applicant is entitled to substantially similar treatment as set forth in some provision of this Ordinance * * *.

2. *McMillan v. Goleta Water District*, 738 F.2d 447 (9th Cir.1984) (memorandum disposition) acknowledged that mere "potential" water users had no property interest under California law subject to protection under the United States Constitution.

nation and equal protection claims, and dismissed the substantive due process claim for lack of subject matter jurisdiction. The McMillans timely appealed.

## III. DISCUSSION

### A. Standard of Review

Summary judgment is appropriate if, viewing the evidence in the light most favorable to the opposing party, the district court finds that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Triangle Mining Co., Inc. v. Stauffer Chemical Co.*, 753 F.2d 734, 738 (9th Cir. 1985). This court reviews *de novo* a district court's order of summary judgment. *Id.* This court also reviews *de novo* a district court's order dismissing a claim for lack of subject matter jurisdiction, favorably viewing the facts alleged to support jurisdiction. *Boettcher v. Secretary of Health and Human Services*, 759 F.2d 719, 720 (9th Cir.1985).

### B. Equal Protection Claim

■ Appellants assert that their right to equal protection was violated because applying the moratorium to them served no legitimate governmental purpose. However, they have set forth no evidence showing that the Water District's motivation was other than a rational interest in upholding the moratorium.[3]

> The mere showing of some discrimination by the state is not sufficient to prove an invasion of one's constitutional rights. * * * However, absent a suspect classification or invasion of fundamental rights, equal protection rights are violated only where the classification does not bear a rational relationship to a legitimate state interest.

*Construction Industry Ass'n, Sonoma City v. City of Petaluma*, 522 F.2d 897, 906 n. 11 (9th Cir.1975), *cert. denied*, 424 U.S. 934, 96 S.Ct. 1148, 47 L.Ed.2d 342 (1976). Inasmuch as the McMillans have

not alleged the existence of a suspect classification or an invasion of fundamental rights, no genuine issue of material fact exists regarding their equal protection claim. Consequently, we affirm the district court's grant of summary judgment on the equal protection claim.

### C. Inverse Condemnation Claim: The Statute of Limitations

In remanding this case to the district court, we directed that

> After the complaint is amended, the district court should explicitly consider whether the statute of limitations bars suit for discontinuation of actual or "constructive" use of water service. Also, if necessary, it should consider whether California law recognizes a property right to water service for constructive users and whether the district court should abstain from deciding this case under the doctrine established in *Railroad Commission v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

*McMillan v. Goleta Water District*, 738 F.2d 447 (9th Cir.1984) (memorandum disposition), at 1455. In their amended complaint, appellants alleged that they were actual users of water at the time the moratorium was declared. In its memorandum and order on remand, the district court assumed, for purposes of applying the statute of limitations, that "plaintiffs could provide sufficient evidence to create a triable issue of fact whether they were actual (or 'constructive') users and not merely potential users."

■ The proper statute of limitations for this action is one year. *Wilson v. Garcia*, —— U.S. ——, 105 S.Ct. 1938, 1949, 85 L.Ed.2d 254 (1985) (all Section 1983 claims are best characterized as personal injury actions); Cal.Code Civ.Proc. § 340(3) (statute of limitations for a cause of action for personal injury in California is one year). The district court here, before *Wilson v. Garcia* was decided, borrowed California's

---

**3.** The primary "evidence" the McMillans set forth is speculation that the moratorium was enacted and continued in furtherance of an illegitimate "no growth" policy.

five-year statute under Code of Civil Procedure Section 336 governing actions for mesne profits of real property. Under either statute of limitations, appellants' claim would be barred if the cause accrued in 1973 or 1974 (as asserted by appellees), and would not be barred if it accrued when the Water District issued the final denial of appellants' application on November 12, 1982 (as asserted by appellants). Thus the determinative issue is whether the cause of action accrued in or before 1974, or on November 12, 1982.

■ The district court determined that the McMillans' claim arose in 1973 or 1974 when they knew or should have known that their rights to continued water service had been interrupted on other than a temporary basis. In so doing, the district court relied on *Mosesian v. County of Fresno*, 28 Cal. App.3d 493, 104 Cal.Rptr. 655 (1972), which held that an inverse condemnation claim accrues when the taking is objectively complete, not when the claimant is subjectively convinced that the taking is permanent rather than temporary. The district court considered the Water District's final refusal of the McMillans' claim significant only insofar as it caused the McMillans to become subjectively convinced of the permanence of their water deprivation. Under *Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, — U.S. ——, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), this was error.

> As the Court has made clear in several recent decisions, a claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue.

*Id.* at 3117.[4] The rationale for this rule is that "[i]f [the property owners] were to seek administrative relief under these procedures, a mutually acceptable solution might well be reached with regard to individual properties, thereby obviating any need to address the constitutional questions." *Id.* (quoting *Hodel v. Virginia Surface Mining & Reclamation Ass'n, Inc.*, 452 U.S. 264, 297, 101 S.Ct. 2352, 2371, 69 L.Ed.2d 1 (1981)). Thus the appellants' taking claim accrued on November 12, 1982, and consequently their commencement of this action on May 2, 1983 was not barred by the statute of limitations.

## D. Substantive Due Process

Appellants assert that the district court erroneously dismissed their substantive due process claim in reliance on the conclusion implicit in *Hollister Park Investment Co. v. Goleta County Water District*, 82 Cal.App.3d 290, 147 Cal.Rptr. 91 (1978), that the water moratorium was rationally related to a legitimate government purpose, i.e. water conservation and development. Appellants assert that it was error to compel them to accept the *Hollister* decision as determinative of their federal taking claim, because they were not involved in the *Hollister* litigation.

■ The decision of the California Court of Appeal in *Hollister* was based on the premise that "[a] *potential* water user does not possess 'an absolute right to be treated in the same manner as existing water consumers within [a] water district * * *.' " 82 Cal.App.3d at 294, 147 Cal. Rptr. at 93 (emphasis added). Thus *Hollister Park* stands for the proposition that Goleta's water moratorium is constitutional *as applied* to *potential users* of water. Yet here the district court did not determine whether the McMillans were actual water users, as they contended, or whether they were merely potential users. *Hollister* is applicable only once this determination is made. Therefore the district court's dismissal of the McMillans' substantive due process claim in light of *Hollister* was erroneous, and is reversed and remanded for the district court to determine whether the McMillans were actual or potential water users. If it finds that they were only po-

---

4. Note that finality differs from exhaustion of remedies, which is not a prerequisite for suits predicated on 42 U.S.C. § 1983. *See Williamson County*, 105 S.Ct. at 3120.

tential users, their substantive due process claim must fall in light of *Hollister*. If it finds that they were actual users, the district court will be faced with the issue, left undecided by both the United States Supreme Court and the Ninth Circuit, whether property owners can recover damages for inverse condemnation. In *San Diego Gas & Electric Co. v. City of San Diego*, 450 U.S. 621, 636–61, 101 S.Ct. 1287, 1296–1309, 67 L.Ed.2d 551 (1981), a majority of the Supreme Court indicated it "apparently is of the opinion—contrary to that of the California Supreme Court in [*Agins v. City of Tiburon*, 24 Cal.3d 266, 157 Cal.Rptr. 372, 598 P.2d 25 (1980) ]—that damages *are* recoverable for inverse condemnation." *Martino v. Santa Clara Valley Water District*, 703 F.2d 1141, 1148 (9th Cir.), *cert. denied*, 464 U.S. 847, 104 S.Ct. 151, 78 L.Ed.2d 141 (1983) (emphasis in original) (*Martino* also refrained from deciding whether property owners could recover damages for inverse condemnation). However, because the Supreme Court concluded that it lacked jurisdiction in *San Diego Gas*, it did not decide the issue whether a state "must provide a monetary remedy to a landowner whose property allegedly has been 'taken' by a regulatory ordinance claimed to violate the Just Compensation Clause of the Fifth Amendment." *San Diego Gas*, 450 U.S. at 623, 101 S.Ct. at 1289. *See also Agins v. City of Tiburon*, 447 U.S. 255, 263, 100 S.Ct. 2138, 2143, 65 L.Ed.2d 106 (1980).

### E. Abstention

The appellees argue that the district court should have abstained under *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). The application of the *Pullman* doctrine is at the sound discretion of the trial court. *Bank of America National Trust and Saving Association v. Summerland County Water District*, 767 F.2d 544, 546 (9th Cir.1985).

*Pullman* abstention is appropriate when three tests are met.

(1) The complaint "touches a sensitive area of social policy upon which the federal courts ought not to enter unless no alternative to its adjudication is open."
(2) "Such constitutional adjudication plainly can be avoided if a definitive ruling on the state issue would terminate the controversy."
(3) The possibly determinative issue of state law is doubtful.

*Canton v. Spokane School District # 81*, 498 F.2d 840, 845 (9th Cir.1974), citing *Pullman; Midkiff v. Tom*, 702 F.2d 788, 789 n. 1 (9th Cir.1983), *rev'd on other grounds, sub nom. Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 104 S.Ct. 2321, 81 L.Ed.2d 186 (1984).

■ The allocation of water during times of water shortage is a sensitive area of social policy. *See Summerland*, 767 F.2d at 546. Thus the first *Pullman* criterion is met. Whether the second and third criteria are fulfilled requires analysis of the precedential value of *Agins v. City of Tiburon*, 24 Cal.3d 266, 157 Cal.Rptr. 372, 598 P.2d 25 (1979), *aff'd on other grounds*, 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980). In *Agins*, the California Supreme Court was "persuaded by various policy considerations to the view that inverse condemnation is an inappropriate and undesirable remedy in cases in which unconstitutional regulation is alleged," *id.* at 275, 157 Cal. Rptr. at 376, 598 P.2d at 29, and "that on balance mandamus or declaratory relief rather than inverse condemnation is the appropriate relief under the circumstances." *Id.* at 276–77, 157 Cal.Rptr. at 378, 598 P.2d at 31. The Court reasoned that

Community planners must be permitted the flexibility which their work requires. * * *

[T]he utilization of an inverse condemnation remedy would have a chilling effect upon the exercise of police regulatory powers at a local level because the expenditure of public funds would be, to some extent, within the power of the judiciary. * * * The weighing of costs and benefits is essentially a legislative process. In enacting a zoning ordinance,

the legislative body assesses the desirability of a program on the assumption that compensation will not be required to achieve the objectives of the ordinance. * * * Legislation in the nature of zoning can be and has been enacted by the people through a direct initiative. Are the voters, through the initiative power, also to have this unwelcome power to *inadvertently* commit funds from the public treasury?

*Id.* at 275–76, 157 Cal.Rptr. at 377, 598 P.2d at 30 (emphasis in original). However, the precedential value of *Agins* has been called into doubt. *See Bank of America National Trust and Saving Association v. Summerland County Water District,* 767 F.2d 544, 547 (9th Cir.1985) (after *San Diego Gas & Electric Co. v. City of San Diego,* 450 U.S. 621, 660–61, 101 S.Ct. 1287, 1308–09, 67 L.Ed.2d 551 (1981), *"Agins* stands on something of a precedential precipice.") If the California state courts would conclude that *Agins* applies solely to zoning ordinances, and not to the water moratorium ordinance, and if the McMillans recover just compensation via an inverse condemnation action, then the need for constitutional adjudication by the federal court would be obviated.[5]

However, a federal court need not abstain merely because there exists the abstract possibility that state courts might render adjudication of the federal question unnecessary. *Hawaii Housing Authority v. Midkiff,* 467 U.S. at 237, 104 S.Ct. at 2327. *See also Midkiff v. Tom,* 702 F.2d at 789–90, n. 1. Consequently the district court did not abuse its discretion by failing to abstain.

## IV. CONCLUSION

The grant of summary judgment to the Water District on the equal protection claim is affirmed. The dismissal of the substantive due process claim is reversed, as is the dismissal of the taking claim as time-barred.

AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings consistent with this opinion.

---

5. Under California law, inverse condemnation claims based on the *taking* of private property are subject to a five-year statute of limitations. Cal.Code Civ.Proc. §§ 318, 319 (West 1982). *See Garden Water Corp. v. Fambrough,* 245 Cal.App.2d 324, 328, 53 Cal.Rtpr. 862, 864–65 (1966); *Frustuck v. City of Fairfax,* 212 Cal.App.2d 345, 373–74, 28 Cal.Rptr. 357, 374–75 (1963); *Ocean Shore R.R. Co. v. City of Santa Cruz,* 198 Cal.App.2d 267, 270–72, 17 Cal.Rptr. 892, 894–95 (1961). However, inverse condemnation claims based on "acts of *trespass or injury* to property which do not involve the taking or damaging of private property for a public use" are subject to

a three-year statute of limitations (Cal.Code Civ. Proc. § 338, subd. 2 (West 1982)). *Frustuck,* 212 Cal.App.2d at 374, 28 Cal.Rptr. at 375 (emphasis added). *See also Leaf v. City of San Mateo,* 104 Cal.App.3d 398, 405 n. 2, 163 Cal. Rptr. 711, 715 n. 2 (1980); *Garden Water,* 245 Cal.App.2d at 328, 53 Cal.Rptr. at 864–65; *Ocean Shore,* 198 Cal.App.2d at 270–71, 17 Cal.Rptr. at 894. Because the McMillans' state inverse condemnation claim would apparently be based on a taking rather than on a trespass, the five-year statute of limitations would apply, so their state suit would not be time-barred.