[Civ. No. 36316. First Dist., Div. Two. Mar. 25, 1976.]

ALBERT G. SWANSON, Plaintiff and Respondent, v.
MARIN MUNICIPAL WATER DISTRICT et al.,
Defendants and Appellants.

514

COUNSEL

Ferguson, Hoffman, Henn & Mandel, Douglas P. Ferguson and Tom Thorner for Defendants and Appellants.

Albert G. Swanson, in pro. per., for Plaintiff and Respondent.

OPINION

ROUSE, J.—Defendant Marin Municipal Water District (hereafter "District") appeals from a judgment granting plaintiff Albert Swanson a peremptory writ of mandate compelling District to grant plaintiff a pipeline extension and to provide water service to his real property.

For reasons set forth herein, we conclude that District did not act either fraudulently, arbitrarily or capriciously in enacting a moratorium on new water service connections. Thus we are compelled to reverse the judgment of the trial court.

The facts upon which the case was submitted to the trial court for decision disclose that, for a number of years prior to 1973, District had calculated the net safe yield of water within the district to be 30,000 acre feet per annum. On January 24, 1973, an outside consulting firm, which had been hired to report upon conditions of water supply and demand, delivered to the district a comprehensive report based upon a new computer analysis of district statistics. This report indicated that the safe annual yield within the district was in fact only 26,000 acre feet per

annum. The water district staff then prepared a chart comparing the new safe yield figures with actual water consumption figures for the period July 1966 through March 1973. The chart demonstrated that actual consumption of water had exceeded the district's net safe yield, in a degree increasing with each year, in 73 of the 81 months during this period.

On February 14, 1973, following a public hearing, the board of directors of District adopted Resolution No. 4845. In its resolution, the board found that the average estimated water consumption in the district was expected to reach 32,500 acre feet in 1973-1974, but that the annual safe water yield of the district was only 26,000 acre feet; that the total storage capacity of the existing system was approximately 53,000 acre feet and that said storage was at maximum capacity at the date of the resolution; that an average runoff of 55,000 acre feet (or more) had occurred in 23 out of the 60 years of record, a runoff of 21,000 acre feet (or less) had occurred in 8 out of the 60 years, and a runoff of 35,000 acre feet (or more) had occurred in 38 out of the 60 years; that if a runoff of 21,000 acre feet (or less) were to occur in the winter of 1973-1974 and in the following year, it would be necessary to institute mandatory rationing in order to meet the demands of the system for the summer and fall months of 1975. The resolution concluded that a water shortage emergency condition prevailed within the area served by the district in that the ordinary demands and the requirements of water consumers could not be satisfied without depleting the water supply of the district to the extent that there would be insufficient water for human consumption, sanitation and fire protection. The board further determined that the water shortage emergency condition did not constitute an immediate emergency but was due to a threatened water shortage.

Plaintiff Swanson owned a parcel of Marin County real property on which he planned to build a home for himself and his family. On April 27, 1973, he filed with District an application for a pipeline extension and proposed pipeline extension agreement and paid the required engineering fee. This application and fee were conditions precedent to the approval of water service to plaintiff's property. Plaintiff had previously obtained planning commission approval of the architectural plans for his house, had obtained a building permit and had cleared the building site for the construction of a foundation.

On April 30, 1973, following a public hearing, the board of directors of District adopted Ordinance No. 120, an interim urgency ordinance

which confirmed the findings contained in Resolution No. 4845 and, specifically, the existence of a threatened water shortage. Pursuant to Ordinance No. 120, District amended the Marin Municipal Water District Code to provide that no new water service would be granted or installed, with certain limited exceptions.

On June 7, 1973, Ordinance No. 120 was superseded by a more detailed ordinance, No. 121. This latter ordinance was again based upon a finding that a "threatened water shortage" existed, and, further, that the ordinary demands and requirements of water consumers within defendant District could not be satisfied without depleting the water supply of the district to the extent that there would be insufficient water for human consumption, sanitation and fire protection. Ordinance No. 121, with limited exceptions, prohibited the granting of new water service where a pipeline extension was required, but allowed new service to any person who had an existing water main fronting on his property and who applied for water service within 120 days after April 30, 1973.

Plaintiff Swanson's application for water service and for a pipeline extension was rejected by District on June 15, 1973. Subsequently, on July 25, 1973, plaintiff's request for a variance was denied by District. Plaintiff then commenced this action by filing his verified petition for a writ of mandate to compel District to grant him water service.

The trial court made detailed and extensive factual findings and concluded that an emergency water shortage condition existed only when: (a) there was a complete outage on a short or long term basis; or (b) the district's system was overcommitted and facing consecutive dry cycle years; or (c) the district's system was overcommitted and experiencing a dry cycle; or (d) the water storage was below the 15,000 acre feet emergency level. The court determined that none of these conditions existed in 1973 when the water moratorium ordinance was enacted, nor did they exist at present.

The court further concluded, as a matter of law, that District was without common law or statutory authority to prohibit water connections or extensions to members of its water district under the circumstances of this case; that District could not use section 71640[1] of the Water Code to prevent new water connections or extensions, since that section only provided for steps which could be taken against existing water users and

---

[1]Unless otherwise indicated, all code section references herein are to the Water Code.

did not authorize a water district to prohibit new water service; that the failure of District to grant plaintiff's application for water was arbitrary and discriminatory, in that District was not authorized by law, under the circumstances then existing, either to prohibit new water connections or extensions or to distinguish between applicants with or without existing frontage water mains; that District's sole statutory authority to prohibit new water connections or extensions (pursuant to Ordinances Nos. 120 and 121) was found in sections 350 through 356, and that those sections required a water shortage emergency; that at the time of the adoption of Ordinance No. 121, there was no water shortage, in that ordinary demands and requirements of the water consumers could be satisfied without depleting the district's water supply to the extent that there would be insufficient water for human consumption, sanitation and fire protection; that in fact, at least two consecutive years of minimal rainfall would have had to occur before such a condition would have existed; that District was therefore not authorized to declare a moratorium on new water connections or extensions, and that Ordinances Nos. 120 and 121 were invalid and could not be used to prevent plaintiff from receiving water service.

Judgment was entered granting plaintiff a writ of mandate compelling District to grant plaintiff's pipeline extension and to provide water service to his real property. District has appealed from that judgment.

District first contends that the water moratorium enacted by it was specifically authorized by section 350 et. seq.,[2] and directs our attention particularly to the provisions of section 358, which defines the scope of judicial review of the water district's actions in this situation. That section confines court review to a determination of whether the board's actions were fraudulent, arbitrary or capricious.

---

[2]Section 350 states that "The governing body of a distributor of a public water supply ... may declare a water shortage emergency condition to prevail within the area served by such distributor whenever it finds and determines that the ordinary demands and requirements of water consumers cannot be satisfied without depleting the water supply of the distributor to the extent that there would be insufficient water for human consumption, sanitation, and fire protection."

Section 351 provides that "Excepting in event of a breakage or failure of a dam, pump, pipe line or conduit causing an immediate emergency, the declaration shall be made only after a public hearing at which consumers of such water supply shall have an opportunity to be heard to protest against the declaration and to present their respective needs to said governing board."

Section 353 provides that "When the governing body has so determined and declared the existence of an emergency condition of water shortage within its service area, it shall thereupon adopt such regulations and restrictions on the delivery of water and the consumption within said area of water supplied for public use as will in the sound

■ It should be noted that, even in the absence of such statute, the scope of review would be so limited since, by declaring a water shortage emergency condition and enacting a moratorium on new water service, District was acting in a legislative, rather than an adjudicatory, capacity. Thus District's actions were not subject to judicial review under section 1094.5 of the Code of Civil Procedure, but were reviewable only by means of ordinary mandate (Code Civ. Proc. § 1085) where the court is limited to a determination of whether District's actions were arbitrary, capricious or entirely lacking in evidentiary support, or whether it failed to follow the procedure and give the notices required by law. (*Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 34, fn. 2 [112 Cal.Rptr. 805, 520 P.2d 29]; *Pitts* v. *Perluss* (1962) 58 Cal.2d 824, 833 [27 Cal.Rptr. 19, 377 P.2d 83]; *Wilson* v. *Hidden Valley Mun. Water Dist.* (1967) 256 Cal.App.2d 271, 286 [63 Cal.Rptr. 889].)

The language of section 350 makes it clear that a water district is empowered to anticipate a future water shortage and to impose appropriate regulations and restrictions where, lacking such control, its water supply will become depleted and it will be unable to meet the needs of its consumers. District challenges the trial court's determination that section 350 requires an immediate emergency, in the sense that a water district is presently unable to meet the needs of its consumers. In support of its position, District points out that section 350 provides for the declaration of a water shortage emergency condition where the board finds that the ordinary demands and requirements of consumers cannot be satisfied without "depleting" the water supply to the extent that there "would" be insufficient water for human consumption, sanitation and fire protection. District argues that this wording implies that the board may take steps to prevent a future water shortage from occurring and that it need not wait until it is actually unable to supply its consumers' present needs before acting to conserve its water supply.

In further support of its position, District notes that section 351 distinguishes between an "immediate emergency" and the type of situation covered by section 350 and provides that in the case of an immediate emergency, as where a dam has broken, the board may act without a public hearing.

discretion of such governing body conserve the water supply for the greatest public benefit with particular regard to domestic use, sanitation, and fire protection."

Section 355 provides that "The regulations and restrictions shall thereafter be and remain in full force and effect during the period of the emergency and until the supply of water available for distribution within such area has been replenished or augmented."

Section 356 provides that "The regulations and restrictions may include the right to deny applications for new or additional service connections . . . ."

Section 353 requires that when the board has declared the existence of an emergency condition of water shortage, it shall adopt regulations and restrictions as will, in its sound discretion, "conserve the water supply" for the greatest public benefit with particular regard to domestic use, sanitation and fire protection. ■ The use of the word "conserve" implies that a water district is empowered to maintain an appropriate reserve of water to meet future needs and that it need not empty its reservoir before undertaking conservation measures.

Section 355 provides that when the board declares a water shortage emergency condition and imposes appropriate regulations and restrictions, they shall remain in effect until the water supply has been "replenished or augmented." District contends that, in this instance, the word "replenished" refers to a situation where, when the water shortage emergency condition was declared, the water supply had already been depleted; further, that it must be distinguished in its use from the word "augmented," which refers to a situation where, at a time when a water shortage emergency condition was declared, the water supply, although not yet actually depleted, could not meet an increased demand without depletion in the future and was therefore in need of being "augmented." Thus, argues District, section 355 "clearly envisions that when an undepleted supply cannot be augmented to meet increasing demand, a water shortage emergency may be declared to prevail within the service area."

Based upon its interpretation of the applicable statutes, District contends that its declaration of a water shortage emergency condition was entirely proper and finds adequate support in its findings that the average estimated water consumption in the district was expected to exceed the annual safe water yield of the district by 6,500 acre feet in 1973-1974; that the ordinary demands and requirements of water consumers therefore could not be satisfied without depleting the water supply to the extent that there would in the near future be insufficient water for human consumption, sanitation and fire protection. District asserts that under these circumstances, there is no basis for any claim that it acted fraudulently, arbitrarily or capriciously in declaring the existence of a water shortage emergency condition and in enacting a moratorium on new service connections, as specifically authorized by section 356.

■ We agree with District's analysis of the pertinent provisions of the Water Code here involved. Also, we find additional support for District's

authority to act in this situation within the provisions of section 71640.[3] That section authorizes the imposition of restrictions upon use of District water in any emergency caused by either a *threatened* or an *existing* water shortage. It seems clear that a threatened water shortage is one type of emergency contemplated by the phrase "water shortage emergency," as set forth in section 350 et seq. Section 71640 permits a district to prohibit use of its water "for specific uses which it finds to be nonessential." We note that the ordinance which is here under attack (i.e., Ordinance No. 121) provides that the uses prohibited and restricted therein "are hereby determined to be nonessential." Finally, we recall that section 356 provides that the restrictions authorized by section 350 et seq., may include the right to deny applications for new service connections. We find nothing in the language of section 71640 which limits its application to existing water users.

Plaintiff Swanson has made no real attempt to meet District's arguments. His position is that, within the meaning of section 350, a water shortage emergency condition can only be declared when "an immediate existing water shortage" is actually present. Plaintiff contends that since District's reservoir was filled to capacity and contained 53,000 acre feet of water when the moratorium was declared, there was in no sense an immediate existing water shortage, since if District were to use the water in its reservoir to supply the needs of its consumers, it would take two years, with minimal rainfall, before there would actually be insufficient water for human consumption, sanitation and fire protection. Plaintiff argues that "The summer two years away does not present an immediate threat and is, rightfully, an administrative problem."

Plaintiff's position does not find support in the language of the applicable Water Code sections. He relies upon certain cases which have construed the word "emergency" in contexts having no real bearing upon the issues with which we are here concerned. Plaintiff also points out that section 350 is the 1953 codification of Statutes 1949, chapter 23, which contained (in § 5) a declaration that the statute was an urgency measure requiring immediate implementation. Since the declaration of urgency referred to an "immediate necessity" for the protection of the

---

[3]Section 71640: "A district may restrict the use of district water during any emergency caused by drought, or other threatened or existing water shortage, and may prohibit the wastage of district water or the use of district water during such periods for any purpose other than household uses or such other restricted uses as the district determines to be necessary. A district may also prohibit use of district water during such periods for specific uses which it finds to be nonessential."

public peace, health and safety in the face of the limited water supply available in many sections of California, plaintiff reasons that sections 350 through 358 were intended to be applicable only where an "immediate" water shortage exists. ■ We cannot agree with this analysis since the declaration of urgency refers only to the "immediate necessity" for enacting Statutes 1949, chapter 23. To hold that this statute, as codified in the Water Code, requires an immediate present water shortage before a water district can take steps to conserve its water supply, is an unreasonable interpretation of its provisions.

Plaintiff raises the additional arguments that sections 350 through 358 are unconstitutional because (1) they provide for a taking of property without just compensation and (2) they discriminate between individuals already receiving water service from District and those who wish to obtain water service in the future, even though all of these individuals would use the water solely for human consumption and domestic purposes.

■ Plaintiff's constitutional arguments must fail on their merits. His contention that his property was taken without just compensation and that he had an absolute right to be treated in the same manner as existing water consumers within the water district is not valid since it is evident that a potential water user does not possess any absolute right to be afforded water service and that the Constitution does not require that he be treated in the same manner as established users of the water system. In *Butte Co. W. U. Assn.* v. *Railroad Com.* (1921) 185 Cal. 218, 230 [196 P. 265], our Supreme Court aptly stated that "a water company supplying water for irrigation has not the power to take on new consumers without limit. Its power to supply water is, of course, limited by the amount of its supply, and when the demands of its consumers upon it have reached this limit, it has no right to take on new consumers to the necessary injury of those it has. But it is not always easy to determine just when the limit of supply is reached, and the factor of safety which should be allowed against exceptional seasons may vary from locality to locality. . . . The matter is one of judgment, a judgment which it may well be should be exercised conservatively, but a matter of judgment nevertheless."

The author of a recent law review article observes that "Although the general rule applied by the courts to public utilities is that a public utility must serve on reasonable terms all those who desire the service it renders, and may not arbitrarily discriminate against members of the public, discrimination as to service may be based upon a reasonable classification. The right of inhabitants of a municipality to compel extension of service to them is not an absolute and unqualified right; it is based to a large extent on the reasonableness of the demand. Because a public utility may not discontinue service to consumers, knowing they are dependent on the service, a refusal to extend service to new customers would seem reasonably justified when the resource demanded becomes limited. When there is barely enough water to service present users, refusal to inconvenience them by adding additional burdens to the water system surely cannot be termed arbitrary and discriminatory." (Dewey, *Battle of the Heavyweights: In This Corner Environmental Rights and In The Far Corner Free Travel Rights* (1974) 1 Hastings Const.L.Q. 153, 164-165.)

In this instance, since actual water consumption was already in excess of District's net safe water yield, we find that it was neither unreasonable nor an invasion of plaintiff's constitutional rights for District to enact a moratorium on new water service.

Finally, we turn to plaintiff's contention that District had no valid basis for granting new service connections, for a limited period of time, to individuals with existing water mains fronting on their property, while denying new service connections to all others.

■ An ordinance which distinguishes between parties does not violate the equal protection or due process clause if the distinction rests upon a rational basis, and it must be presumed to rest on that basis if there is any conceivable state of facts which would support it. (*City of San Jose* v. *Donohue* (1975) 51 Cal.App.3d 40, 45 [123 Cal.Rptr. 804].) Here, District distinguishes such apparent discrimination between potential water users whose property fronts on existing water mains and those whose property does not upon two bases, namely, that (a) the potential draw upon existing mains is a generally known quantity, whereas to create new pipelines could expand demand without known limits; and (b) suddenly to prohibit hookups to existing water mains would create

obvious hardships to persons nearing completion of residential construction, whereas pipeline extensions required by new development are almost invariably applied for prior to the commencement of any subdivision construction. We find that these facts constitute a valid and rational basis for distinguishing between those applicants with existing water mains and those without existing water mains.

In view of the foregoing, we conclude that District did not act either fraudulently, arbitrarily or capriciously in declaring a water shortage emergency condition to exist and in enacting a water moratorium on new water service connections; hence, that the trial court exceeded the limited scope of its review in granting plaintiff the writ of mandate. It becomes unnecessary, therefore, for us to consider District's additional contentions on appeal.

In passing, it must be noted that, as to Mr. Swanson and others who are similarly situated, we are not unmindful of the somewhat dire consequences which flow from our decision in this matter. Politically, the power to "cut off one's water" by the simple expedient of imposing a moratorium such as the one here involved is a potent weapon in effecting a no-growth policy within a community. Since District has neither the power nor the authority to initiate or implement such a policy, the imposition of any restriction on the use of its water supply for that purpose would be invalid. We hasten to point out, however, that, as indicated by our decision, we find no evidence in the record before us of any such abuse of authority. Nevertheless, we do foresee a continuing obligation on the part of District to exert every reasonable effort to augment its available water supply in order to meet increasing demands. Clearly, the Legislature anticipated the need for such a requirement when it limited the duration of such restriction to the period of the emergency and "until the supply of water available for distribution within such area has been replenished or augmented." (§ 355.)

The judgment is reversed. The trial court is directed to enter judgment for defendant Marin Municipal Water District.

Taylor, P. J., and Kane, J., concurred.

A petition for a rehearing was denied April 23, 1976, and the opinion was modified to read as printed above. Respondent's petition for a hearing by the Supreme Court was denied May 19, 1976.