[No. H005715. Sixth Dist. Mar. 28, 1990.]

WALLACE GETZ et al., Plaintiffs and Appellants, v.
PEBBLE BEACH COMMUNITY SERVICES DISTRICT, Defendant
and Respondent.

**COUNSEL**

Jones & Jones and W. Montgomery Jones for Plaintiffs and Appellants.

George S. Roberts for Defendant and Respondent.

**OPINION**

**ELIA, J.**—Does a community services district authorized to collect, treat and dispose of sewage under Government Code section 61600, subdivision (b) have the power to allocate permits for sewer connections so as to exclude hookups for senior citizen housing units in the Del Monte Forest, even though Government Code section 65852.1 and Monterey County Ordinance No. 20.92.070 encourage their creation? We conclude it does, and affirm the trial court's order denying a petition for writ of mandate.

FACTUAL AND PROCEDURAL BACKGROUND

Appellants Wallace and Peggy Getz own a home in Pebble Beach, in the Del Monte Forest area of Monterey County. A sewer connection to the house is provided by respondent, Pebble Beach Community Services District (PBCSD). In 1988, appellants had an architect design an addition to their residence which qualified as a senior citizen housing unit, as defined in Government Code section 65852.1 and Monterey County Ordinance No. 20.92.070.

When appellants applied to the Monterey County Zoning Administrator for a use permit, a hearing was held on the application. Included in the

administrator's written findings, was that "adequate sewage disposal and water supply facilities exists [*sic*] or are readily available to the site." As "[e]vidence" for this finding, however, the administrator stated: "The property is provided sewer and water service by California American Water Company and the Pebble Beach Community Services District, respectfully [*sic*]. Prior to the issuance of Building Permits for the project, evidence will be required to assure that these agencies will provide the necessary services." The administrator's decision granted the use permit subject to the condition, inter alia, that appellants provide evidence that sewer service would be provided to the senior citizen housing unit.

When appellants requested respondent issue them a sewer connection permit, respondent refused, citing resolution No. 13-86, which it enacted on May 29, 1986. This resolution provides "[PBCSD] will not issue sewer connection permits for senior citizen units because they are not included in the DMF [UP/LCP] [Del Monte Forest Land Use Plan/Local Coastal Plan.]" Appellants also brought their request to respondent's board of directors, which declared its intention to adhere to the policy expressed in resolution No. 13-86.

Appellants then filed a petition for a writ of mandate to compel respondent to issue a sewer permit. The trial court denied the writ petition, and this appeal ensued.

DISCUSSION

This case presents a conflict between two competing policies: One of encouraging the construction of senior housing units and the other of controlling development to protect California coastal waters by limiting effluent discharge into Carmel Bay.

State policy regarding senior citizen housing is expressed in Government Code section 65852.1, enacted by Statutes 1981, chapter 887, section 2. This statute allows any city or county to "issue a zoning variance, special use permit, or conditional use permit for a dwelling unit to be constructed, or attached to, a primary residence on a parcel zoned for a single-family residence, if the dwelling unit is intended for the sole occupancy of one adult or two adult persons who are 60 years of age or over, and the area of floor space of the dwelling unit does not exceed 640 square feet." The legislative policy behind the enactment of this statute was "(1) . . . to encourage the creation of more residential units for persons over the age of 60. [¶] (2) There is a serious shortage of housing units for persons over the age of 60. [¶] (3) There is an important need to maintain senior citizens in independent living situations and also to encourage housing arrangements

that prevent isolation of elderly persons and reunites [*sic*] families." (Stats. 1981, ch. 887, § 1, p. 3399.)

As authorized by Government Code section 65852.1, Monterey County, in 1983, enacted ordinance No. 20.92.070. As amended in 1984, this ordinance permits senior citizen units "on any lot or parcel in any zoning district . . . that allows single family dwellings, subject to a use permit in each case . . . ."

The competing policy of controlling development to protect coastal waters commences in this case with Water Code section 13200, which establishes nine regional water quality control boards. Monterey County is part of the Central Coast region (Wat. Code, § 13200, subd. (c)). The State Water Quality Control Board designated portions of Carmel Bay as areas of special biological significance (ASBS's) in 1975, and the state Department of Fish and Game designated Point Lobos an ecological reserve in 1973, and made that area of Carmel Bay which had been designated an ASBS into an ecological reserve in 1977. In order to protect these biologically fragile waters, the regional water quality control board, in April 1985, limited the discharge from the Carmel sewage treatment plant to three million gallons a day. Respondent is entitled, by contract, to one-third, or one million gallons per day, of this amount.

This allocation was implemented by California Coastal Commission permits which required respondent to allocate its treatment capacity in accordance with the Del Monte Forest Land Use Plan, table B. Respondent demonstrated its compliance with this requirement by adopting resolution No. 12-86, which provides that "PBCSD's one-third portion of the CSD [Carmel Sanitary District] wastewater treatment plant capacity, used in the Coastal Zone, shall be allocated pursuant to the certified Del Monte Forest Land Use Plan, Table B."

The Del Monte Forest Land Use Plan[1] notes that the Carmel sewage treatment plant's limited capacity "shall be the initial control of the amount of new development" in the forest. In light of this restricted capacity, the plan then lists, in priority sequence, the development to which the remaining unused sewage capacity should be allotted. The first priority under this plan goes to those existing residences then using septic tanks; the second to most of the existing lots of record. Various developments are also listed on this plan, but senior housing units are absent from it.

---

[1] We do not know from the record when this plan was enacted; possibly 1982 or 1983. It appears to predate the Regional Water Quality Control Board's April 1985 order but it is unclear by how long.

In December 1986, respondent received from its engineer an analysis of existing and future sewage capacity. This study concluded that even without the addition of senior housing units, it had insufficient capacity to "serve existing users and allowed [sic] future development." Specifically, if senior housing units were allowed sewer hookups, respondent concluded it would run out of available sewer capacity before the owners of existing undeveloped lots of record, who pay an annual sewer standby fee, could obtain sewer permits. Respondent implemented this policy by means of resolution No. 13-86, which, as we have noted, states PBCSD's intention to withhold sewer connection permits for senior citizen units because they are not included in the Del Monte Forest Land Use Plan. It has apparently adhered to this policy since the resolution was enacted.

■ Appellants argue that respondent had no power to withhold sewer service from senior housing units. We disagree. Government Code section 61600 authorizes respondent, as a community services district, to provide sewage collection and treatment service. The trial court concluded, and we agree, that respondent's authority to allocate sewer service was authorized by Government Code section 61622, which grants special districts "the power generally to perform all acts necessary to carry out fully the provisions of this division." Respondent's responsibility in this regard is analogous to that exercised by a municipal water district responsible for water and sewer service, which must "fairly allocat[e] this vital finite resource for the benefit of the entire populace within the District when faced with a demand greater than the capacity of the system." (*Carlton Santee Corp.* v. *Padre Dam Mun. Water Dist.* (1981) 120 Cal.App.3d 14, 26 [174 Cal.Rptr. 413].)

The record also makes plain that since the California Coastal Commission, as a condition of its permit to respondent, mandated that this allocation be consistent with the Del Monte Forest Land Use Plan, respondent had no discretion to allocate its sewer capacity in any other way.

In sum, we conclude that the general, statewide policy which supports building senior housing must yield in this case to the competing state policy which mandates protection of ecologically fragile coastal waters and to the local land use plan which implements this policy. Appellants' complaints would be better addressed to the local land use planning and control agencies which oversee this task, and which, in this case, saw fit to make the construction of senior housing of lesser importance than other development.

Appellants' other arguments are readily disposed of: They anticipate respondent's making an argument that they should have exhausted their administrative remedies prior to filing a writ petition. Respondent made this

argument without success to the trial court and does not renew it on appeal. They also argue the zoning administrator's "finding" that adequate sewer service was available somehow prevents respondent from now claiming its capacity is limited. This argument ignores the record evidence, which we have already cited, which made issuance of building permits contingent on respondent's providing sewer service to appellants.

The trial court's order is affirmed.

Premo, Acting P. J., and Cottle, J., concurred.