[No. B204630. Second Dist., Div. Eight. Apr. 15, 2009.]

DAILY JOURNAL CORPORATION, Plaintiff and Appellant, v. COUNTY OF LOS ANGELES, Defendant and Respondent; METROPOLITAN NEWS COMPANY, Real Party in Interest and Respondent.

1552

## COUNSEL

Iverson, Yoakum, Papiano & Hatch, Neil Papiano and Joanna L. Orr for Plaintiff and Appellant.

Raymond G. Fortner, Jr., County Counsel, Elizabeth M. Cortez, Assistant County Counsel, and Brandi M. Moore, Deputy County Counsel, for Defendant and Respondent.

Roger M. Grace for Real Party in Interest and Respondent.

## OPINION

**RUBIN, Acting P. J.**—Daily Journal Corporation appeals from the dismissal of its mandate petition after the trial court sustained without leave to amend the demurrers of respondent Los Angeles County (County) and real party in interest Metropolitan News Company. We hold that the petition is moot to the extent it seeks to "unwind" the County's 2004 contract with Metropolitan News to place ads for various legal notices. To the extent the petition seeks to force the County to seek reimbursement from Metropolitan News in order to recoup certain alleged overpayments as waste, we affirm because the action does not fall within the parameters of a taxpayer claim for government waste.

### PROCEDURAL HISTORY

In October 2004, Los Angeles County awarded the Metropolitan News Company (Met News) a contract to place legal advertising in its own and

various others newspapers throughout the County. Met News was selected over its competitor, Daily Journal Corporation, after both companies submitted bids in response to the County's invitation to bid for the contract. The three-year contract took effect in November 2004, and could be extended for up to another two years. Daily Journal protested the decision and for many months complained that the contract was awarded improperly and that Met News was overbilling the County. When its efforts were rebuffed, Daily Journal sued the County in February 2007 in a mandate petition (Code Civ. Proc., § 1085) seeking (1) an order that the County cancel the contract and award it instead to Daily Journal, and (2) an order that the County force Met News to repay the County for alleged overcharges.[1]

Following the County's successful demurrer, Met News was added as a real party in interest. Demurrers by the County and Met News to a first amended petition were sustained with leave to amend. Demurrers to the second amended petition were sustained without leave to amend on the ground that the allegations did not show a violation of a prescribed duty by the County in regards to either the bidding and contract award process or its alleged decision to forego a reimbursement claim for supposed overcharges by Met News.[2] Daily Journal appeals from the judgment of dismissal that followed.

### FACTS[3]

Government Code section 25502 states that whenever a county board of supervisors "employs a purchasing agent it shall not be necessary for it to advertise for bids for furnishing county supplies . . . with the exception of advertising." The parties agree that this imposes a duty on counties to call for bids for advertising services. The bid invitation at issue here solicited quotes for advertising rates at newspapers with circulations ranging up to 125,000. Daily Journal's bid included price quotes on such newspapers, as well as ones with circulations greater than 125,000. The County told Daily Journal that the bid invitation did not call for such bids. However, after the contract was awarded, the County agreed that Met News could place legal ads in newspapers with larger circulations at rates negotiated by Met News and those publications. Therefore, the petition alleges, while the County fulfilled its duty to take bids for ads in smaller newspapers, it violated Government Code

---

[1] We will sometimes refer to the County and Met News collectively as respondents.

[2] The second amended petition also sought orders requiring the County to seek repayment from Met News and canceling the Met News contract.

[3] In accord with the standard of review, as set forth, *post*, our statement of facts comes from the allegations of the second amended petition, which we must accept as true.

section 25502 because it never took bids to place ads in papers with circulations over 125,000. As a result, the County ended up paying more for those services.

Daily Journal also alleged that the Met News bid understated the true advertising rates from several newspapers in which it intended to place County legal ads, and that those papers complained to Met News about its use of unethical and strong-arm tactics in connection with those rates. Daily Journal brought these matters to the County's attention, and demanded that the County cancel the Met News contract and award it to Daily Journal instead. Although the petition includes as exhibits letters from the County insisting that Met News abide by the contract rates, documents obtained by Daily Journal from the County's response to the Daily Journal's public information requests allegedly showed that the County was overpaying for the placement of legal notices by as much as $375,000 a year. Daily Journal also alleged this led to a windfall of excess commissions for Met News of $56,000 each year. According to the amended petition, in February 2006, after receiving complaints from the publisher of the Eastside Sun about Met News's unauthorized ad rates, the County amended its contract to allow Met News to double the rates charged in papers with circulations up to 125,000.

The County refused to cancel the contract and, in a letter attached as an exhibit to the petition, said it believed Met News was adhering to the contract rates and that it refused to pay Met News any more than the contract allowed.

Respondents contended, and the trial court agreed, that the County's bidding process did not violate Government Code section 25502. The County was free to structure its bid requests as it had, and was not required to solicit any particular information, such as the rates to be charged for ads placed in newspapers with circulations greater than 125,000. In short, the court read the bid invitation as a request to bid for legal ad placements in newspapers of any size, with a request for rate information as to only newspapers with circulations less than 125,000. As for seeking reimbursement of any alleged Met News overcharges, the trial court ruled that the decision whether to pursue reimbursement, including a possible lawsuit, involved an exercise of discretion by the County that took Daily Journal's claim outside the realm of a cause of action for waste.

## STANDARD OF REVIEW

In reviewing a judgment of dismissal after a demurrer is sustained without leave to amend, we must assume the truth of all facts properly pleaded by the plaintiff-appellant. Regardless of the label attached to the cause of action, we must examine the complaint's factual allegations to determine whether they

state a cause of action on any available legal theory. (*Black v. Department of Mental Health* (2000) 83 Cal.App.4th 739, 745 [100 Cal.Rptr.2d 39].) The judgment will be affirmed if it is proper on any of the grounds raised in the demurrer, even if the court did not rely on those grounds. (*Pang v. Beverly Hospital, Inc.* (2000) 79 Cal.App.4th 986, 989 [94 Cal.Rptr.2d 643].)

We will not, however, assume the truth of contentions, deductions, or conclusions of fact or law and may disregard allegations that are contrary to the law or to a fact which may be judicially noticed. When a ground for objection to a complaint, such as the statute of limitations, appears on its face or from matters of which the court may or must take judicial notice, a demurrer on that ground is proper. (Code Civ. Proc., § 430.30, subd. (a); *Black v. Department of Mental Health, supra*, 83 Cal.App.4th at p. 745.) We may take judicial notice of the records of a California court. (Evid. Code, § 452, subd. (d).) We must take judicial notice of the decisional and statutory law of California and the United States. (Evid. Code, § 451, subd. (a).)

Daily Journal sought a writ of mandate under Code of Civil Procedure section 1085, which provides that such a writ may be issued "to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station . . . ." Under this section, a writ petition "must plead facts showing that a public body or official has a clear legal and usually ministerial duty and that the petitioner has a beneficial interest in or right to the performance of that duty." (*Building Industry Assn. v. Marin Mun. Water Dist.* (1991) 235 Cal.App.3d 1641, 1645 [1 Cal.Rptr.2d 625].) The writ may not be issued to control that public body's or official's exercise of discretion, however. Although a court may order a government entity to exercise its discretion in the first instance when it has refused to act at all, the court will not "compel the exercise of that discretion in a particular manner or to reach a particular result." (*Id.* at p. 1646.)

## DISCUSSION

Daily Journal's petition seeks two types of relief: (1) an order that the County terminate its contract with Met News and award it instead to Daily Journal due to defects in the bidding process; and (2) an order that the County seek reimbursement from Met News for alleged overpayments under the contract. As to the first, the only possible basis for a mandatory duty concerning bids for advertising services is found in Government Code section 25502. As respondents and the trial court observed, nothing in that statute specifies a particular bidding procedure or compels the solicitation of bids in any particular manner. The County's bid invitation described the nature of the contract being bid on as:

"NEWSPAPER PUBLICATION SERVICES—FOR: ADVERTISING—MISCELLANEOUS—PROCESS AND PLACE LEGAL NOTICES AND OTHER ADVERTISEMENTS IN ADJUDICATED NEWSPAPERS OF GENERAL CIRCULATION THROUGHOUT THE COUNTY OF LOS ANGELES, AND OCCASIONALLY IN PUBLICATIONS OUTSIDE THE COUNTY, FOR ALL COUNTY DEPARTMENTS—AS FOLLOWS:

"PUBLICATION OF STATEMENT OF PROCEEDINGS—WEEKLY OF ALL MEETINGS, COUNTY ORDI- NANCES AND MISCELLANEOUS LEGAL NOTICES AND OTHER ADVERTISEMENTS BY LOS ANGELES COUNTY EXECUTIVE OFFICE OF THE BOARD OF SUPERVISORS"

This was followed by spaces asking the bidders to state the advertising rates on newspapers of varying circulations, up to 125,000. The terms of the bid also stated that the County remained free to negotiate prices, terms and conditions with the winning bidder.

Given the broad language of the description of services, we see the logic in respondents' contention that the County was seeking bids for the placement of legal ads in newspapers of any size, but sought specific rate bids as to only smaller newspapers. The County would then negotiate with the winning bidder on the rates for larger newspapers. Because there are no statutory impediments to seeking bids in this manner, the County arguably had no duty to request bids as Daily Journal contends.

We are also mindful of Daily Journal's allegation that it was told by someone at the County that its bid invitation did not ask for rate information on larger newspapers and that Daily Journal's bid should not have included bids for those larger publications. While this is consistent with respondents' theory that the County sought bids to provide ad placement services in publications of any size, but sought rate information as to only smaller publications, it could also raise an inference that the bid invitation excluded larger newspapers.

We do not have to resolve this issue, however, because it has been rendered moot by events occurring after the notice of appeal was filed. According to the County, its contract with Met News was extended for one year and expired in November 2008. A new invitation to bid was issued in May 2008. As a result, Daily Journal's attempt to cancel and take over that contract is moot. Daily Journal does not dispute these facts, but contends the issue is not moot because it is likely to recur and we must interpret Government Code section 25502 in order to ensure that the County complies with its requirement to take bids for advertising services, and because the County's violation of that provision is likely to "infect the outcome of the new solicitation . . . ."

■ It is well settled that an appellate court will decide only actual controversies and that a live appeal may be rendered moot by events occurring after the notice of appeal was filed. We will not render opinions on moot questions or abstract propositions, or declare principles of law which cannot affect the matter at issue on appeal. (*Giles v. Horn* (2002) 100 Cal.App.4th 206, 226–227 [123 Cal.Rptr.2d 735].) This rule has regularly been applied when injunctive relief is sought but, pending appeal, the act sought to be enjoined has been performed. (*Id.* at p. 227.) At issue in *Giles* was an action to enjoin as illegal a county's expenditure of public funds to hire private contractors to provide services under a state welfare program. Because those contracts expired and were fully performed pending appeal, the appeal was dismissed as moot. (*Id.* at pp. 227–228; see *Jennings v. Strathmore Public Utility Dist.* (1951) 102 Cal.App.2d 548, 549 [227 P.2d 838] [appeal in action to enjoin and declare invalid a public utility district contract after the contract had been awarded and work was fully completed was moot].)

Daily Journal does not contend that the recent May 2008 bid invitation, or any contracts awarded as a result of that invitation, were improper. Because the County's 2004 contract with Met News has expired, even if Daily Journal were correct in its argument, we could no longer order the County to terminate that contract and award it to Daily Journal instead. Given the vagaries of future contracts for publication of legal notices—affected surely by economic factors and new technologies—we cannot say that the present controversy is likely to recur. Accordingly, that part of the appeal is moot and must be dismissed.[4]

The remaining portion of Daily Journal's mandate petition is based on the contention that Met News overcharged for its services and that the County is committing waste by failing to seek reimbursement from Met News. Code of Civil Procedure section 526a (section 526a) provides that "[a]n action to obtain a judgment, restraining and preventing any illegal expenditure of, waste of, or injury to, the estate, funds, or other property of a county, town, city or city and county of the state, may be maintained against any officer thereof, or any agent, or other person, acting in its behalf, either by a citizen resident therein, or by a corporation, who is assessed for and is liable to pay, or, within one year before the commencement of the action, has paid, a tax therein."

■ Section 526a gives citizens standing to challenge governmental action and is liberally construed to achieve that purpose. Taxpayer suits are authorized only if the government body has a duty to act and has refused to do so. If it has discretion and chooses not to act, the courts may not interfere with

---

[4] Daily Journal's appellate counsel conceded the mootness issue at oral argument.

that decision. (*California Assn. for Safety Education v. Brown* (1994) 30 Cal.App.4th 1264, 1281 [36 Cal.Rptr.2d 404].) The term "waste" under section 526a " 'means something more than an alleged mistake by public officials in matters involving the exercise of judgment or wide discretion. To hold otherwise would invite constant harassment of city and county officers by disgruntled citizens and could seriously hamper our representative form of government at the local level. Thus, the courts should not take judicial cognizance of disputes which are primarily political in nature, nor should they attempt to enjoin every expenditure which does not meet with a taxpayer's approval. On the other hand, a court must not close its eyes to wasteful, improvident and completely unnecessary public spending, merely because it is done in the exercise of a lawful power.' " (*Sundance v. Municipal Court* (1986) 42 Cal.3d 1101, 1138–1139 [232 Cal.Rptr. 814, 729 P.2d 80].) In that sense, the limitations inherent in section 526a actions are founded in the separation of powers principle of our tripartite system of government.

██ It has long been held that a government entity's decision whether to pursue a legal claim involves the sort of discretion that falls outside the parameters of waste under section 526a and cannot be enjoined by mandate. *Boyne v. Ryan* (1893) 100 Cal. 265 [34 P. 707], cited by respondent, is most directly on point. The plaintiff was a taxpayer who alleged that Sacramento County was overbilled by a newspaper for publishing legal notices, and that payment was made without obtaining bids and without proper verification of the amount being claimed. The law at the time required the district attorney to sue for recovery of any monies paid by the board of supervisors without legal authority.[5] The plaintiff, a taxpayer, brought a mandate petition against the Sacramento district attorney after he refused to sue the newspaper to recover the money it had been paid. Our Supreme Court affirmed a judgment for the district attorney because, despite the provision requiring him to sue, the decision whether to do so was still a matter subject to his discretion that could not be controlled by mandate. Even if the district attorney were forced to sue, the court could not compel him to actually prosecute the action and supervise his handling of the case. (*Id.* at p. 267.)

This rationale was applied in *Elliott v. Superior Court* (1960) 180 Cal.App.2d 894 [5 Cal.Rptr. 116], where a taxpayer purported to sue on behalf of Solano County after the county refused to join in his action against operators of a gas field. The Court of Appeal held that taxpayers may not sue on behalf of the government to enforce a claim belonging to the government because the court cannot interfere with government officials in the exercise of their discretionary acts. "If a taxpayer could sue on behalf of the state, or one of its agencies, for a cause of action which the state or the agency has refused to assert on a matter within its discretion, the discretion to act would no

---

[5] No such provision applies here.

longer reside in the executive or administrative official but in the taxpayers." (*Id.* at p. 897.) The court said that governments cannot operate if every citizen who believes a public official has abused his discretion is given the right to seek judicial review of the official's acts. Governing bodies have control of the property and general supervision over the ordinary business of the corporation. Otherwise, " 'there would be utter confusion . . . .' " (*Ibid.*) In *Silver v. Watson* (1972) 26 Cal.App.3d 905 [103 Cal.Rptr. 576], a taxpayer sued the owner of certain business personal property on behalf of Los Angeles County, after the assessor was charged with bribery in connection with allegations that he purposely undertaxed the property for several years. After the assessor was acquitted of the bribery charge, the county refused to sue. The Court of Appeal affirmed the dismissal of the complaint because the decision whether to pursue the claim was within the county's discretion. Finally, the plaintiff in *TRIM, Inc. v. County of Monterey* (1978) 86 Cal.App.3d 539 [150 Cal.Rptr. 351], brought an action for waste, claiming the county was not collecting all the tax revenues it could through a different assessment practice. The appellate court held that those allegations were deemed insufficient to state a claim under section 526a, but the plaintiff was given leave to amend if he could allege that the assessment methods failed to comply with some statutory requirement. (*TRIM, Inc.*, at pp. 543–545.)

■ At bottom, Daily Journal alleges that the County has committed waste by failing to seek reimbursement, presumably by way of litigation if necessary, from Met News. The exhibits to Daily Journal's own petition show that the County looked into the matter and satisfied itself that it had no claim worth pursuing. In the absence of allegations showing fraud or collusion, this was purely a matter of the County's discretion and is therefore not subject to a claim for waste or an action in mandate. (*Elliott v. Superior Court, supra,* 180 Cal.App.2d at p. 897.)[6]

[6] Daily Journal cites several decisions concerning a taxpayer's right to bring a mandate petition for waste, but none concerns the discretionary power at issue here. (See *People ex rel. Younger v. County of El Dorado* (1971) 5 Cal.3d 480, 491 [96 Cal.Rptr. 553, 487 P.2d 1193] [suit by Attorney General to compel two counties to pay their share of support costs to a regional planning agency as required by statute, also noting that mandate does not lie for discretionary acts]; *Marshall v. Pasadena Unified School Dist.* (2004) 119 Cal.App.4th 1241, 1252 [15 Cal.Rptr.3d 344] [mandate petition to compel school district to put construction contract up for bid, as required by statute]; *Bradley v. Lacy* (1997) 53 Cal.App.4th 883, 893–895 [61 Cal.Rptr.2d 919] [mandate proper to compel district attorney to file, as required by statute, a grand jury accusation accusing an elected official of misconduct; distinguishing *Boyne v. Ryan, supra,* 100 Cal. 265 because the criminal accusation at issue was not the same as a civil action]; *County of Fresno v. Malmstrom* (1979) 94 Cal.App.3d 974 [156 Cal.Rptr. 777] [petition to compel county assessor to tax property as required by law].)

At oral argument, Daily Journal's appellate counsel contended that Daily Journal might somehow have a damages claim founded perhaps on fraud, but was not able to articulate what that cause of action might be. We note that the operative second amended petition, like its predecessors, stated nothing other than mandate claims for waste and for flaws in the bidding

## DISPOSITION

For the reasons set forth above, the appeal is dismissed to the extent it seeks an order requiring the County to cancel its contract with Met News and award it instead to Daily Journal. As for Daily Journal's waste claim, the order sustaining respondents' demurrers without leave to amend and the concomitant judgment of dismissal are affirmed. Respondents shall recover their appellate costs.

Flier, J., and Bauer, J.,* concurred.

---

process, and at no time did Daily Journal seek leave to amend its petition to assert a damage claim against Met News. Absent cogent argument on Daily Journal's ability to amend its pleadings in some manner, we reject the contention raised at oral argument.

*Judge of the Orange Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.