Filed 6/21/16  Marriage of Posey CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re the Marriage of ERIN E. and JERROLD C. POSEY. | |
| ERIN E. POSEY, Respondent, v. JERROLD C. POSEY, Appellant. | F068702 (Super. Ct. No. S-1501-FL-608219) **OPINION** |

APPEAL from orders of the Superior Court of Kern County.  Cory Woodward and John D. Oslesby, Judges.

Darling & Wilson, Joshua G. Wilson, David A. Cole and Jason R. Ekk for Appellant.

Law Offices of Ira L. Stoker and Ira L. Stoker for Respondent.

-ooOoo-

Mootness is the threshold question presented by this appeal.  The trial court authorized the wife in this marriage dissolution proceeding to sell a business that the

spouses had conducted under a limited liability company owned in equal shares. The husband did not obtain an order granting a stay of the sale, but contends an automatic stay came into effect when he filed his notice of appeal.

The wife did not believe an automatic stay existed and completed the sale of the assets, which included leases to land at a county airport. Specifically, in May 2014, the wife signed and delivered the conveyance documents to an escrow agent, the buyers deposited nearly $3.9 million into escrow, and the sale was completed. The sale proceeds were used to pay off bank loans, agent fees, escrow fees and another creditor. The balance of approximately $1.8 million was reduced further in 2015 by a payment to a business creditor and $100,000 distributions to the husband and the wife.

California law holds that an appeal is moot if the appellate court cannot grant practical, effective relief. (*Citizens for the Restoration of L Street v. City of Fresno* (2014) 229 Cal.App.4th 340, 362 (*L Street*).) The husband contends restitution is available and would constitute effective relief. The parties to this litigation do not include (1) the County of Kern (County), the owner of the airport and landlord under the leases; (2) the third party purchasers; (3) the banks that received part of the sale proceeds; or (4) the creditor paid off in 2015. We cannot restore the husband and wife to the position they occupied prior to the sale by returning their interests in the airport leases. Doing so could not be accomplished without unwinding the sale and returning the buyers' purchase price. Nearly half of those funds have been distributed and neither this court nor the trial court has the authority to force the banks and the other creditor to return the funds they received. For these and other reasons discussed below, we conclude effective appellate relief is not available and the husband's challenges to the sale are moot.

We therefore grant the motion to dismiss the appeal.

**FACTS**

*Parties*

In May 2005, Erin E. Posey (Erin) and Jerrold C. Posey (Chris) were married. Chris is pilot with a degree in aviation management. Before the marriage, Chris started Bakersfield Air Charter and operated it for 22 years.

*The Business*

In January 2006, Erin and Chris started a new business, filing articles of organization for Epic Jet Center, LLC (Epic LLC) with the California Secretary of State and signing an operating agreement for Epic LLC as its members. They each owned a one-half interest in Epic LLC. Chris's declaration stated that he invested over $1.6 million from the sale of Bakersfield Air Charter into Epic LLC.

Epic LLC was formed to do business as a fixed-base operator with its principal office on Skyway Drive in Bakersfield. Epic LLC held leases to land and facilities at Meadows Field Airport,[1] where it operated a private terminal that provided fuel and accommodations to tenants with their own aircraft. The leases covered airport property known as Lease Site 8 and Fuel Farm Site #3 and also included a parking lot. The parking lot agreement was designated by County as agreement number 998-2008. Lease Site 8 is divided into Sublease 8A, which includes the "Epic Building," and Sublease 8B, which includes the "FedEx Building"—a two-story building rented to Federal Express with office space in the front and a warehouse space at the rear.[2] The "Epic Building" is an office-hangar completed in 2007 and referred to as the Epic Jet Center. The center was leased to four tenants, including the company that purchased Bakersfield Air Charter.

---

[1] Meadows Field Airport is owned by the County of Kern, is one of seven airports operated by the county's department of airports, and has been assigned airport code "BFL." The County of Kern is the landlord under the leases.

[2] Chris claims the sublease to Federal Express is his separate property.

3.

*Dissolution Proceeding*

On December 18, 2008, Erin and Chris separated. They had no children. On December 30, 2008, Erin filed a petition for dissolution of marriage and a domestic violence restraining order.

Many details about the history of the marriage, the operation of Epic LLC, and the disputes raised in the dissolution proceeding are not relevant to the mootness issue and, thus, are not set forth in this opinion. The challenged orders authorized Erin to sell Epic LLC's business and, consequently, the facts relevant to this appeal relate to those orders, the sale and the events that occurred after the sale was completed.

*The Sale*

In April 2013, Erin filed a request for an order approving the sale of the business. She also requested that the funds from the sale be placed in trust until the court decided issues relating to reimbursement of separate property contributions made by the parties for the purchase of the business and the construction of improvements. Erin proposed a sale to Uniglobal Group Limited (Uniglobal), a company based in Hong Kong. Her moving papers described the proposed transaction as follows: "The sale price for the leasehold and fueling rights, along with the fedex facility contract is 3.9 million dollars." The sale proceeds were to be used to pay off an outstanding loan from Mission Bank of approximately $1.9 million, a line of credit from Chase Bank of $120,000, and a debt owed Jed Francis of approximately $10,000. The remaining $1.8 million was to be held in trust pending the resolution of the separate property issues.

*Court Approval of Sale*

On May 28, 2013, a hearing was held on Erin's request and Chris's objections to the request. The trial court granted the request and directed Erin's counsel to prepare the written order.

On June 12, 2013, the trial court filed its findings and order after hearing. The order "authorize[d] Erin Posey to sign any and all documents necessary to complete the

4.

sale to Uniglobal … or [its] assignee." This order is one of the two orders challenged in Chris's appeal.

Further details about the proceedings, the court's later inclusion of Larry and Teri D. Fernandes as authorized buyers,[3] Chris's appeal, and events that occurred after the appeal (including the closing of the sale to the Fernandeses) are set forth in part I.B, *post*.

## DISCUSSION

I.    MOOTNESS

A.    Basic Principles

Courts decide only justiciable issues. (*Wilson & Wilson v. City Council of Redwood City* (2011) 191 Cal.App.4th 1559, 1573.) Justiciability means the questions litigated are based on an actual controversy. (*Ibid*.) Unripeness and mootness describe situations where there is no justiciable controversy. (*Ibid*.) Unripe cases are those in which an actual dispute or controversy has yet to come into existence. (*Ibid*.) In contrast, mootness occurs when an actual controversy that once was ripe no longer exists due to a change in circumstances. (*Ibid*.)

The test for mootness of an appeal is whether the appellate court can grant practical, effective relief despite the change in circumstances. (*L Street*, *supra*, 229 Cal.App.4th at p. 362.) For example, mootness can occur in litigation involving contractual relationships where there has been a substantive change in the challenged agreement. (E.g., *Daily Journal Corp. v. County of Los Angeles* (2009) 172 Cal.App.4th 1550, 1557 [case moot where contract with county had expired and court could not award it to disappointed bidder]; *County Sanitation Dist. No. 2 v. County of Kern* (2005) 127 Cal.App.4th 1544, 1628-1629 [CEQA challenges based on contract no longer in effect

---

**3**    Chris is a 25 percent owner of Skypark Hangars. Larry Fernandes also owns 25 percent of Skypark Hangars. Chris states that Skypark Hangars' facility was built in 2009 and is situated directly across from the center operated by Epic LLC. Epic LLC had the exclusive right to refuel planes parked in Skypark Hangars' facility.

5.

were moot]; *Giles v. Horn* (2002) 100 Cal.App.4th 206, 227 [challenge to county contracts moot where contracts had been fully performed and had expired].)

B.      Essential Facts

*1.      Court Approval and Appeal*

On May 28, 2013, the hearing was held on Erin's request for an order approving the proposed sale. The trial court granted the motion and issued written findings and order on June 12, 2013. The order stated Erin's request to sell the assets of Epic LLC was granted, "authorize[d] Erin Posey to sign any and all documents necessary to complete the sale to Uniglobal Group Limited or their assignee," and directed the proceeds from the sale to be placed in trust. Chris filed a motion for new trial and an ex parte motion for stay.

On July 11, 2013, the trial court granted Chris's ex parte motion for a stay and directed Chris to post a bond in the amount of $1.5 million. Chris did not post the bond. In September 2013, Chris's motion for a new trial was denied.

In October 2013, Erin returned to court to request authorization to sell Epic LLC to new buyers Larry and Teri D. Fernandes for $3.9 million. On November 13, 2013, a hearing was held on Erin's request. Counsel for Chris presented a new offer from Peter and Nick Dulcich, who were prepared to complete the purchase on the same terms previously authorized by the court. Counsel noted that the offer was presented as a competing offer to the sale proposed by Erin and would allow Chris to maintain a 50 percent interest in the business.

The trial court granted Erin's request to complete the sale to Larry and Teri D. Fernandes on the same terms and conditions previously authorized. On December 2, 2013, the trial court filed its findings and order confirming its order from the May 28, 2013, hearing and stating:

"The court further orders that the Request for Order filed by [Erin] to add in new buyers and to sell the community property owned business, [Epic LLC] (Leasehold 8) in its entirety to Larry & Teri D. Fernandes per the Asset Purchase Agreement, is granted and made an order of the court.

"The court authorizes Erin Posey to sign any and all documents necessary to complete the sale to either Uniglobal Group Limited or their assignee, OR Larry & Teri D. Fernandez.

"All proceeds from the sale of [Epic LLC] shall be placed in trust with [Erin's law firm]."

Three days later, Chris filed a notice of appeal that referred to the June 12, 2013, order and the December 2, 2013, order. Chris did not request a stay of the latest order, either in the trial court or in this court. However, on December 18, 2013, Chris filed a notice of stay of proceedings on Judicial Council form CM-180 (rev. Jan. 1, 2007) which asserted the case was stayed with regard to all parties. As to the reason for the stay, Chris checked box 3.e, "Other," and stated that a notice of appeal had been filed with the appropriate appellate court as of December 5, 2013. The proof of service attached to Chris's notice of stay of proceedings stated the document had been mailed to Erin's attorney, the County's board of supervisors, the County's department of airports, Mission Bank, and the Fernandeses.

## 2. *Landlord's Approval of Transfer*

The ground leases between the County and the Poseys related to (1) airport property known as Lease Site 8 and Fuel Farm Site #3, and (2) a parking lot agreement designated by County as agreement number 998-2008. The leases allowed the Poseys to assign their rights with the County's prior written consent. In lieu of approving an assignment of the leases, the County and Epic Jet Center, Inc., an S corporation formed by the Fernandeses, agreed to combine the leases and enter into a new single agreement to provide a clean and updated ground lease. The recitals in the new agreement stated

7.

that "it is agreed and understood that this Agreement shall have no effect if the sale of the Epic Jet Center business to the [Fernandeses] is not completed." The new agreement provided for an initial term of 30 years and addressed Erin and Chris's dissolution proceeding by stating:

> "Notwithstanding the [initial 30-year term], this Agreement shall not become effective if a court of competent jurisdiction determines that the Kern County Superior Court order of December 2, 2013 (KCSC Case no. S-1501-FL-608219) is subject to a stay preventing the sale of the Epic Jet Center business to the Lessee. In the event a court of competent jurisdiction determines that the December 2, 2013 order is stayed, this Agreement shall become effective once the order of December 2, 2013 become final, or a court of competent jurisdiction determines the order is no longer subject to a stay and the sale of the Epic Jet Center business to the Lessee is completed."

The new agreement and the proceedings before the board of supervisors establish that both the County and the Fernandeses had actual knowledge of (1) the trial court's order authorizing Erin to execute and deliver documents necessary to complete the sale of the leases and (2) Chris's argument that the order was stayed by his appeal.

### 3. Closing the Sale and Distributing Proceeds

California's mootness doctrine is concerned with changes in circumstances and how those changes affect an appellate court's ability to grant practical, effective relief. The circumstances that have changed since the trial court filed its order dated December 2, 2013, and the County approved the transfer of the leases, are described in the next three paragraphs.

On May 8, 2014, the sale of Epic LLC's business, including the leases, to Larry and Teri D. Fernandes was finalized and escrow closed. The buyers deposited $3,870,687 into escrow and a portion of these funds was used to pay agent fees, escrow fees, the line of credit to Chase Bank and the loan from Mission Bank secured by the leaseholds. The remaining $1,778,701.25 was placed in a trust account.

8.

In 2015, further distributions were made from the sale proceeds. Erin requested an order releasing funds to pay her attorney fees and costs. In April 2015, the court granted Erin's request and authorized the release of $100,000 to each party. At that time, Chris requested the release of funds to pay a debt owed to Eastern Aviation Fuels and the court agreed to his request.

In opposing Erin's motion to dismiss this appeal, Chris submitted a declaration dated May 25, 2015. He stated: "About one month ago, the manager at Atlantic Aviation, Heather, told me that the Fernandes[es] had asked her if Atlantic would be interested in purchasing Epic." He also stated that the Fernandeses "continue to own Epic." The record before this court does not show whether the Fernandeses have sold the business or the status of the new lease agreement between them and the County.

C.  Change in Circumstances and Effective Relief

1.  *Vacating the Orders*

Chris's appellate briefs request this court to vacate the trial court's orders of June 12, 2013, and December 2, 2013. If we reversed and directed the trial court to vacate those orders, Chris would not receive practical, effective relief. The transaction authorized by those orders has been completed. Therefore, we conclude that simply vacating the orders would not provide effective relief because the underlying transaction would remain completed.

2.  *Returning the Parties to Their Prior Position*

Next, Chris claims effective relief is available in the form of restitution, which the trial court could order on remand. Chris cites Code of Civil Procedure section 908, which states that when an order is reversed, "the reviewing court may direct that the parties be returned so far as possible to the positions they occupied before the enforcement of or execution on the judgment or order." It also states:

> "In doing so, the reviewing court may order restitution on reasonable terms and conditions of all property and rights lost by the erroneous judgment or

9.

order, so far as such restitution is consistent with rights of third parties and may direct the entry of a money judgment sufficient to compensate for property or rights not restored." (Code Civ. Proc., § 908.)

Under the circumstances presented, we cannot enter an order that unwinds the sale of Epic LLC's assets and restores the litigants to the position they occupied before the sale was completed. Such an order would involve directing the third parties who have received the sale proceeds to return those proceeds, directing the County to reinstate the leases and parking lot agreement, and directing the buyers to return the rights and interests acquired in the sale in exchange for a return of the sale price. Neither this court nor the trial court has the authority to enter and enforce such an order because Mission Bank, Chase Bank and Eastern Aviation are not parties to this litigation and cannot be ordered to return the money paid to them. Such an order would not be "consistent with rights of third parties." (Code Civ. Proc., § 908.) For instance, we cannot force Mission Bank to extend credit to the Poseys so that the portion of the sale price used to pay off the bank loan can be returned to the Fernandeses. Therefore, restitution cannot be ordered in this case.

### 3. *Automatic Stay and a Money Judgment*

Another possibility for effective relief suggested by Chris is "the entry of a money judgment sufficient to compensate for property or rights not restored." (Code Civ. Proc., § 908.) Chris's arguments relating to a money judgment appear to involve two types of wrongs allegedly committed by Erin. The first type relates to violations of duties in connection with her management of Epic LLC and negotiation of the sale. (See pt. I.C.4, *post*.)

The second category, which we address in this section, relates to whether Erin committed a wrong by going through with the court-authorized sale. In other words, did Erin violate an automatic stay when she signed and delivered the documents necessary to complete the sale? We conclude no violation occurred because there was no automatic

10.

stay. As a result, we need not decide whether such a violation could be remedied by a money judgment awarded on remand.

Chris obtained no order staying the proceeding pending appeal or otherwise prohibiting Erin from going forward with the sale. He contends an automatic stay was in place despite the fact that no bond was fixed by the trial court. By claiming that his notice of appeal triggered an automatic stay, Chris took the risk that California law did not actually impose a stay. Conversely, when Erin went ahead with the sale by delivering the necessary documents into escrow, she took the risk that there was an automatic stay and, as a result, the orders authorizing her action were no longer operative.

The legal basis for Chris's contention that an automatic stay is in effect is Code of Civil Procedure section 916, subdivision (a), which provides:

> "Except as provided in Sections 917.1 to 917.9, inclusive, and in Section 116.810, the perfecting of an appeal stays proceedings in the trial court upon the judgment or order appealed from or upon the matters embraced therein or affected thereby, including enforcement of the judgment or order, but the trial court may proceed upon any other matter embraced in the action and not affected by the judgment or order."

This statutory language does not refer directly to litigants or parties to the action. Instead, the automatic stay applies to "proceedings in the trial court" upon the order appealed from or upon the matter embraced therein or affected thereby. (Code Civ. Proc., § 916, subd. (a).) These "proceedings in the trial court" include "enforcement" of the order. (*Ibid.*) Thus, the question of statutory interpretation presented is whether Erin's execution and delivery of the escrow documents is a "proceeding[] in the trial court." We note that the trial court's orders authorized, but did not compel, Erin to sign and deliver the documents.

While an appeal is pending, the trial court's power to enforce, vacate or modify an appealed judgment or order is suspended. (*Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 189.) The automatic stay prevents the trial court from rendering

11.

an appeal futile by altering the appealed judgment or order or by conducting other proceedings that affect the judgment or order. (*Id*. at p. 198.)

In contrast, if a judgment or order is self-executing and requires no process of enforcement, there is no statutory stay. (*Veyna v. Orange County Nursery, Inc.* (2009) 170 Cal.App.4th 146, 156 (*Veyna*)). In *Veyna*, minority shareholders filed an action to involuntary dissolve a corporation. (*Id*. at p. 148.) The corporation elected to buy out the moving parties and avoid dissolution. (*Ibid*.) The trial court entered a decree fixing the fair value of the shares and ordering a judgment for the winding up and dissolving of the corporation unless the corporation paid for the shares before a specified date. (*Id*. at pp. 149-150.) The appellate court held there was no automatic stay of the decree because it was self-executing—that is, *without further action by the superior court*, the corporation would be wound up and dissolved if the shares were not purchased by the prescribed date. (*Id*. at p. 156; see Eisenberg, Cal. Practice Guide: Civil Appeal and Writs (The Rutter Group 2015) § 7:2.4, p. 7-2 [self-executing means no process for enforcement is required]; Black's Law Dict. (9th ed. 2009) p. 608 ["enforcement" is the act or process of compelling compliance with a law, mandate, command, decree or agreement].)

Based on these principles about self-executing orders and judgments, we conclude the trial court's orders authorizing the sale was a self-executing order because, like the decree in *Veyna*, it required no further action by the trial court or a levying officer to implement its terms. Stated in statutory terms, Erin's signing and delivery of the escrow documents necessary to complete the sale were not a "proceeding[] in the trial court." (Code Civ. Proc., § 916, subd. (a).) Consequently, Chris's filing his notice of appeal did not automatically prohibit Erin from completing the sale. Accordingly, we conclude that there is no relief available for the alleged violation of an automatic stay. In short, Chris gambled that an automatic stay was in place and lost.

12.

### 4. Reversal and Chris's Claims for Breach of Duty

Chris also argues that practical, effective relief would result from a reversal of the challenged orders because reversal would remove Erin's defense to his claims that she violated her fiduciary duties under Epic LLC's operation agreement and under Family Code section 2102. In Chris's view, "with the challenged orders in place, she can invoke those orders as a defense to her violations of duty and to her breach of the Operating Agreement" and reversal of the orders will afford him practical relief in prosecuting those claims against Erin.

One question presented by this argument is whether the challenged orders provide Erin with a defense to Chris's breach of duty claims. Chris has not developed his argument by identifying what rule of law or legal doctrine creates the defense or bar he contends exists. It follows that he has not cited any legal authority to support the argument. (Cal. Rules of Court, rule 8.204(a)(1)(B) [each point briefed must be supported "by argument and, if possible, by citation of authority"].) Furthermore, our review of the orders themselves has not revealed any language suggesting that they bar the claims Chris has raised.

It is possible that Chris's argument implies that (1) his claims would be barred by the doctrine of res judicata or claim preclusion or (2) issues relating to those claims would be regarded as decided against him under the doctrine of collateral estoppel or issue preclusion. For either of these doctrines to apply and create a bar to Chris's claims for breach of statutory and fiduciary duties, those claims must have been actually litigated in the earlier proceedings. (See *Boeken v. Philip Morris USA, Inc.* (2010) 48 Cal.4th 788, 797 [res judicata operates to bar a claim identical to a claim litigated in prior proceedings]; *Smith v. Selma Community Hospital* (2010) 188 Cal.App.4th 1, 25 [five elements of collateral estoppel include whether the issue was actually litigated in the former proceeding].)

Chris has not shown that the elements of either doctrine were satisfied. As a result, he has not shown that the orders, if allowed to stand, would provide Erin with a defense to his claims for breach of duty. It follows that he has not demonstrated a reversal of the orders would remove a bar and thereby provide him with practical, effective relief.[4] (See *L Street*, *supra*, 229 Cal.App.4th at p. 362.)

### 5. Relief Against the Purchasers

Chris's opposition to the motion to dismiss the appeal argues that vacating the order authorizing the sale would provide practical, effective relief because he could pursue a lawsuit against the buyers. He contends that prior to closing the purchase the Fernandeses had full knowledge that (1) the sale was being made pursuant to a court order that had been appealed and (2) he had contended his appeal automatically stayed the trial court's order. Based on this knowledge, Chris contends the Fernandeses are not protected bona fide purchasers, but acquired their interest subject to the outcome of this appeal.

Chris supports his position that the buyers took the property subject to the outcome of this appeal by citing *Arrow Sand & Gravel, Inc. v. Superior Court* (1985) 38 Cal.3d 884 (*Arrow*), which states: "'It has been broadly stated that *except as to purchases made at sales carried out under and by judicial decree*, a person who, in making a purchase of property, relies on an appealable decision takes the risk of the ultimate decision.' [Citations.]" (*Id*. at p. 888, fn. 4.) In that case, a property owner had filed a notice of lis pendens relating to its intent to appeal from a judgment that had been entered in a judicial foreclosure action on a deed of trust. (*Id*. at p. 886.) The notice of

---

[4]  We need not address whether Chris's walking away from the management of Epic LLC in the summer of 2011 constitutes a breach or repudiation of the operating agreement and, thus, precludes him from successfully claiming that Erin breached the operating agreement after she began managing the business. (See *Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 821 [an element of a breach of contract cause of action is the plaintiff's performance, or excuse for nonperformance, of the contract].)

lis pendens was filed before the commissioner's foreclosure sale.  The beneficiary moved to expunge the notice of lis pendens, and the trial court granted the motion.  The foreclosure sale was held and the beneficiary under the deed of trust purchased the property at that sale.  (*Id*. at p. 887.)  The property owner sought a writ of mandate, arguing the trial court erred in granting the motion to expunge.  (*Ibid*.)  The Supreme Court denied the writ, concluding the lis pendens statute did not apply to property owners contesting a judicial foreclosure and that application of the statute did not violate equal protection.  (*Id*. at p. 891.)

First, as stated earlier, we conclude that filing the notice of appeal did not result in an automatic stay of the order authorizing the sale.  (See pt. I.C.3, *ante*.)  Thus, the Fernandeses did not complete a transaction that was stayed and, therefore, did not assume the risk associated with ignoring a stay.  Second, we conclude the broad statement from *Arrow*, *supra*, 38 Cal.3d at page 888 footnote 4, that a person who relies on an appealable decision to purchase property takes the risk of the ultimate decision, does not apply in this case because that broad statement applies to real property sales[5] and there is an exception for "*purchases made at sales carried out under and by judicial decree*."  (*Ibid*.)  Here, the transfer of the leases was made under a judicial order and that order was not stayed.  Thus, the Fernandeses took the risk that there might have been an automatic stay as contended by Chris, but did not take the greater risk relating to the disposition of the appeal.  Instead, Chris took that risk by failing to obtain a stay.

Therefore, we conclude this appeal is moot.

---

[5]     For example, if a purchaser buys real property knowing that there is pending litigation over whether a third party has rights to cross that land under a proscriptive easement, the purchaser who know about the litigation takes title subject to its ultimate outcome.

15.

## DISPOSITION

The motion to dismiss the appeal is granted.  Respondent shall recover her costs on appeal.

_____
FRANSON, J.

WE CONCUR:


_____
LEVY, Acting P.J.


_____
DETJEN, J.